PUGH v. McCORMICK.

1. The 5th section of the act of July 14th, 1870 (16 Stat. at Large, 257),—by which the power of collectors of internal revenue to post-stamp certain instruments of writing and remit penalties for the non-stamping of them when issued, is extended in point of time,—applies to notes issued before the passage of the act as well as to notes issued subsequently.
2. Though error may have been committed by a court below on the then state of statutory law, yet where a statute has been passed since that court gave their judgment, changing the then existing law, so that if the judgment were reversed and the case sent back, the court would now and in virtue of the new statute have to rightly give the same judgment, that they gave before erroneously, this court will affirm.
3. An indorsement of a promissory note need not be stamped under any existing statutes of the United States.
4. Nor a waiver in writing, by an indorser, of demand of payment and notice of dishonor.

ON the 12th of April, 1863, R. C. Martin, at Assumption, Louisiana, drew his promissory note at one year for $7000,

---

* Catharine v. Dickinson, 17 Howard, 170; 1 Parsons on Shipping, 527; The Morning Light, 2 Wallace, 557.

in favor of W. W. Pugh, which note after being indorsed there by Pugh came into the hands of James McCormick. The note, as issued, had no stamp upon it.

It was not paid at maturity and no notice of non-payment was given to Pugh, the indorser, who was thus of course discharged. More than eighteen months after the non-payment, however, Pugh wrote upon the note—

"ASSUMPTION, October 16th, 1865.

"Notice of demand, non-payment, and protest waived, and all legal responsibility assumed.

"W. W. PUGH."

Neither the indorsement nor the waiver of protest, &c., had any stamp.

On the 1st and 14th of July, 1862, the 3d March, 1863, and the 30th of June, 1864, Congress had passed acts* requiring all notes, under penalty of their being incapable of being sued on and void, to bear certain stamps; making also some benignant mitigations of the law in cases where, without fraudulent intent, they had not been stamped; neither acts nor modifications being necessary to be here stated.

On the 13th of July, 1866,† however, was passed an act necessary to be more fully mentioned. That act—amending the 158th section of the act of June 30th, 1864, and enacting that "any person who shall make, sign, or issue, or who shall cause to be made, signed, or issued any instrument, document, or paper . . . or shall accept, negotiate, or pay, or cause to be accepted, negotiated, or paid any bill of exchange, draft, or order, or promissory note for the payment of money without the same being duly stamped . . . with intent to evade the provisions of the act, shall for every such offence forfeit the sum of $50;" and, enacting further, that such instrument, document, or paper, bill, draft, order, or note, not being stamped according to law, shall be deemed invalid and of no effect—went on in its 9th section to make certain provisos by which the instrument, though void when

---

* 12 Stat. at Large, 480, 561; Ib. 725; 13 Id. 291, 481.   † 14 Id. 143.

made, from not being stamped, might be validated and made operative by being post-stamped. The 2d, 3d, and 4th of the provisos ran thus:

"*And provided (2d) further*, That hereafter, in all cases where the party has not affixed to any instrument the stamp required by law thereon, at the time of making or issuing the said instrument, and he or they, or any party having an interest therein, shall be subsequently desirous of affixing such stamp to said instrument, he or they shall appear before the collector of the revenue of the proper district, who shall *upon the payment of the price* of the proper stamp required by law, *and of a penalty of fifty dollars* . . . affix the proper stamp to such instrument or copy, and note upon the margin thereof the date of his so doing, and *the fact that such penalty has been paid*, and the same shall *thereupon* be deemed and held to be as valid, to all intents and purposes, as if stamped when made or issued.

"*And provided (3d) further*, That where it shall appear to said collector, upon oath or otherwise, to his satisfaction, that any such instrument has not been duly stamped at the time of making or issuing the same, by reason of accident, mistake, inadvertence, or urgent necessity, and without any wilful design to defraud the United States of the stamp, or to evade or delay the payment thereof, then, and in such case, if such instrument shall *within twelve calendar months after the first day of August, eighteen hundred and sixty-six, or within twelve calendar months after the making or issuing thereof*, be brought to the said collector of revenue to be stamped, and the stamp tax chargeable thereon shall be paid, it shall be lawful *for the said collector to remit the penalty* aforesaid and to cause such instrument to be duly stamped, and the instrument may be used in all courts and places in the same manner and with like effect as if the instrument had been originally stamped.

"*And provided (lastly) further*, That in all cases where the party has not affixed the stamp required by law upon any instrument made, signed, or issued, at a time when and at a place where no collection district was established, it shall be lawful for him or them, or any party having an interest therein, to affix the proper stamp thereto, . . . and the instrument to which the proper stamp has been thus affixed prior to the first day of January, one thousand eight hundred and *sixty-seven*,

shall be as valid to all intents and purposes as if stamped by the collector in the manner hereinbefore provided."

In this state of enactment McCormick, the holder of the note, sued on the 25th March, 1868, Pugh, the indorser, in one of the inferior State courts of Louisiana, upon it. The trial coming on January 12th, 1870—and there being no question but that a stamp of $3.50 was the proper stamp as respected amount, for the note (on which $5000 had been paid)—the note was offered in evidence, when it was found to have a $3.50 stamp upon it, but also a certificate thus:

Internal revenue stamps to the amount of $3.50 affixed to this instrument and cancelled, by me, at the request of James McCormick, Esq., *this 7th day of October*, 1869. *Penalty remitted,* interest collected.

> . $3.50
> U.S.I.R.
> stamp
> cancelled

J. S. CHAPMAN,
Collector of United States Internal Revenue
for the Second District of Louisiana.

COLLECTOR'S OFFICE, BATON ROUGE, LA., October 7th, 1869.

The defendant objected to the introduction in evidence, of—

1st. The note itself, because a note which had been issued unstamped could not *after twelve months* be post-stamped, unless the penalty was paid; that after twelve months the collector could not stamp and *remit* the penalty.

2d. To the introduction of the indorsement of the defendant to the instrument, because the said indorsement was not stamped at the time of making it, nor at any time since.

3d. To the writing showing a waiver of demand, protest, and notice of protest, because the said waiver was not, and had never been, stamped.

The court overruled the objections, considering—

1st. That the stamping of the note by Chapman, the collector of internal revenue, was regular enough.

2d. That no stamp was needed for the indorsement.

3d. That none was needed for the waiver.

Judgment accordingly was given, January 12th, 1870, for the plaintiff, and that judgment being taken to the Supreme

Court of Louisiana, the judgment was, on the 7th of March, 1870, there affirmed.   The case was now here for review.

The reader perceives, of course, that in *remitting* the penalty the collector of internal revenue had proceeded under the *third* of the provisos, quoted on page 363, his capacity to do which was given but for twelve months from August 1st, 1866, or twelve months from the issuing of the note, *i. e.*, in this particular case, twelve months from the 12th April, 1863; whereas here the collector's certificate showed that the remission had been on the 12th of October, 1869; plainly too late; though had the penalty been *paid*, then, under the previous proviso,—where no limit of time was fixed to the collector's power to post-stamp—the post-stamping would have apparently been good.

In this state of things Congress, on the 14th July, 1870,* passed yet another act, amending the act of July 30th, 1866, containing the provisos above quoted.   It was amended:

"By striking out the words 'fifty dollars,' in the second proviso, and inserting in lieu thereof the following, 'double the amount of tax remaining unpaid, but in no case less than $5;' also by striking out the words 'sixty-six' in the third proviso, and inserting in lieu thereof the words 'seventy-one;' also by striking out the words 'sixty-seven' in the last proviso, and inserting in lieu thereof the words 'seventy-two.'"

Of course, with the act of 1866, thus amended—assuming that the amendatory act operated retrospectively (that is to say, on notes made previously to July 14th, 1870, the date of its passage), though not unless that assumption was made—if the collector any time after its passage and prior to the 1st of August, 1871, affixed the stamp and remitted the penalty the post-stamping would have been good.   Here it had been done on the 12th of October, 1869.

The questions before this court were:

1. Whether this amendatory act of July 14th, 1870, operated retrospectively.

2. Whether, assuming that it did, the court would reverse

---

* 16 Stat at Large, 257.

the judgment below, since though the court below might have wrongly decided at the time that the case came before it (January 12th, 1870), that the collector had power on the 7th October, 1869, to remit the penalty, yet, when by reversal, the case should come again before it the same decision would in virtue of the subsequently passed amendatory act of July 14th, 1870, and its retrospective operation, have to be made, and the same judgment have to be now rightly given which was then given wrongly.

3. Whether the indorsement by Pugh required a stamp.

4. Whether the waiver of demand and notice did.

The case came up to be argued in this court February 7th, 1872.

*Mr. Miles Taylor, for the plaintiff in error; Mr. T. J. Durant, contra.*

Mr. Justice CLIFFORD, on the 19th of February, 1872, delivered the opinion of the court.

Reference will be made to the parties as they existed in the State court where the suit was commenced.

Martin, on the twelfth of April, 1863, by his promissory note of that date promised to pay, twelve months after date, to the order of the defendant, at the place mentioned in the note, seven thousand dollars with eight per cent. interest, and the note is indorsed by the defendant without date.

On the seventh of December of that year the defendant paid two thousand dollars, which is indorsed on the note, and on the seventeenth of May following he made another payment of three thousand dollars, for which a receipt was given by the plaintiff. Prior to that, however, to wit, on the sixteenth of October of the preceding year, the following waiver of protest was signed by the defendant, to wit: "Notice of protest, demand, and protest waived, and all legal responsibilities assumed."

When the note was executed no internal revenue stamps were affixed to it, and it remained without any such stamps until the seventh of October, 1869, when such stamps, to

the amount of three dollars and fifty cents, were, at the re-
quest of the plaintiff, affixed to it and cancelled by the col-
lector of internal revenue for the district, the interest being
collected and the penalty remitted as more fully appears by
the certificate of the collector set forth in the record.

Payment being refused, the plaintiff, as the holder and in-
dorsee of the note in good faith and for value, on the twenty-
fifth of March, 1868, instituted the present action of assump-
sit to recover the balance due on the note. Service was
made and the defendant appeared and pleaded that the
plaintiff acquired the note directly from the maker of the
same; that no consideration ever passed between the de-
fendant and the plaintiff or between the defendant and the
maker of the instrument in regard to the note, and the de-
fendant also denied that he was ever legally bound by the
instrument or that he ever at any time rendered himself
liable to pay the amount. Neither party demanding a jury
the cause was heard and determined by the court, and judg-
ment was rendered for the plaintiff in conformity with the
declaration.

Exceptions were filed by the defendant, and by the excep-
tions it appears that the defendant, when the plaintiff offered
the note in evidence, objected to its admissibility upon three
grounds: (1) Because the face of the instrument was not
legally stamped with the internal revenue stamps, as re-
quired by law; (2) because the indorsement on the note was
not legally stamped; (3) because the certificate waiving de-
mand, notice, and protest was never stamped, and he in-
sisted that the note for the want of such stamps could not
be admitted in evidence. All three objections were over-
ruled, and judgment having been rendered for the plaintiff
the defendant appealed to the Supreme Court of the State,
where the judgment was affirmed. Whereupon the defend-
ant sued out a writ of error to the State court and removed
the cause into this court for re-examination.

Two principal questions are presented by the assignment
of errors: (1.) Whether the stamps affixed to the note were
legally affixed. (2.) Whether the certificate waiving demand,

notice, and protest was an instrument which the internal revenue laws required should be stamped. Evidently a satisfactory response to these questions cannot be given without a careful examination of the several provisions in the acts of Congress imposing such revenue duties, and the modifications of the same as enacted by Congress prior to the time when the note and the certificate of waiver were offered and admitted in evidence.

Promissory notes, except bank notes issued for circulation, where the note was given for a sum exceeding twenty dollars and not exceeding one hundred dollars, were by the act of the first of July, 1862, subjected to a stamp duty of five cents. Nine other gradations were prescribed in the same schedule by which the rate per cent. of the duty was somewhat diminished as the amount of the note was increased. Where the note exceeded five thousand dollars the amount of the stamp duty imposed by that schedule was one dollar and fifty cents, and one dollar in addition for every twenty-five hundred dollars or part of twenty-five hundred dollars in excess of five thousand dollars, which shows that the note given in evidence in this case was subject under that act to a stamp duty of three dollars and fifty cents.*

Persons who made, signed, or issued, or caused to be made, signed, or issued any instrument, document, or paper of any kind, without the same being duly stamped, were declared by the ninety-fifth section to be subject to a penalty of fifty dollars, and the further provision in the same section was that such instrument, document, or paper should be deemed invalid and of no effect. Section one hundred also provided that if any person made, signed, or issued, or caused to be made, signed, or issued, or accepted or paid or caused to be accepted or paid, with design to evade the payment of any such stamp duty, any bill of exchange, draft, or order, or promissory note for the payment of money and liable to any such duty, he should, for every such bill, draft, order, or note forfeit the sum of two hundred dollars.†

---

* 12 Stat. at Large, 480.  † Ib. 475, 477.

Instruments, documents, and papers made, signed, or issued without being duly stamped were, by the ninety-fifth section of that act, declared to be invalid and of no effect, but the twenty-fourth section of the act of the fourteenth of July in the same year provided that no instrument, document, or paper made, signed, or issued prior to the first day of January then next should be deemed invalid or of no effect because it was made, signed, or issued without being duly stamped. Provision, however, was made in the same section that no such instrument, document, or paper should be admitted or used as evidence in any court until it was duly stamped nor until the holder proved to the satisfaction of the court that he had paid five dollars to the collector for the use of the United States.*

Exemption from such declared invalidity and nullity was further extended to such instruments, documents, and papers made, signed, or issued prior to the first day of June, 1863, by the sixteenth section of the act of the third of March, passed in the same year, but the same section also provided that no such instrument, document, or paper, or any copy thereof, should be admitted or used as evidence in any court until the required stamps were affixed, together with the initials of the person affixing the stamps and the date, when the same were so affixed.†

All laws in force in relation to stamp duties when the act of the thirtieth of June, 1864, was passed were by that act continued in force until the first day of August of that year, and the same act adopted a new schedule of stamp duties, which took effect from and after that day. By that schedule persons making, signing, or issuing promissory notes not exceeding one hundred dollars were required to stamp the same with a five-cent stamp, and to add another of the same amount for every additional hundred dollars or fractional part of one hundred dollars.‡

Neither deeds, instruments, documents, or papers, nor any copy thereof, not stamped, as required by previous laws,

---

* 12 Stat. at Large, 561.        † Ib. 725.        ‡ 13 Id. 291, 298.

could be recorded or admitted or used as evidence under that act until the same was stamped as therein required, but the act provided that no instrument, document, or paper, made, signed, or issued *prior to the passage of that act,* without being stamped, should be deemed invalid or of no effect for that cause if the stamp or stamps required should be subsequently affixed, and the act gave authority to the person desiring to use or to record any such deed, instrument, document, writing, or paper as evidence to affix the stamp or stamps thereon required in the presence of the court, register, or recorder.*

But persons making, signing, or issuing any instrument, document, or paper of any kind, or who caused the same to be made, signed, or issued, or who accepted or paid, or caused to be accepted or paid, any bill of exchange, draft, order, or promissory note without the same being stamped, were by that act subjected to a forfeiture of two hundred dollars, and the further provision was that such instrument, document, or paper, bill, draft, order, or note, should be deemed invalid and of no effect.†

Stamps were also required by the act of the thirty-first of March, 1865, where bills of exchange and promissory notes were negotiated as well as where they were accepted and paid, but the forfeiture created by the preceding act for the intentional evasion of the requirements was reduced to fifty dollars instead of two hundred dollars, as provided in the prior law.‡

Provision was also made that persons desirous of affixing stamps to instruments, not stamped as required by prior laws, might appear before the collector of the proper district and affix the same upon paying the price of the proper stamp and the penalty of fifty dollars, with interest on the stamp duty if it exceeded the amount of the penalty. Such acts being done, that is, the proper stamp being affixed, the penalty paid, and a note of those acts and the date thereof made in the margin of the instrument, the section provides

---

* 13 Stat. at Large, 295.          † Ib. 294.          ‡ Ib. 481.

that the instrument "shall thereupon be deemed and held to be as valid to all intents and purposes as if stamped when made or issued."*

Fifty dollars forfeiture for making, signing, or issuing such an instrument, or for causing the same to be made, signed, or issued, or for accepting, negotiating, or paying, or causing to be accepted, negotiated, or paid, any bill of exchange, draft, or order or promissory note, without the same being duly stamped, was also imposed by the act of the 13th of July, 1866, in cases where the act was done with intent to evade the provisions of that act, but the collector was empowered by that act to remit the penalty and to cause the instrument to be duly stamped in all cases where it appeared to his satisfaction that the omission to affix the stamp happened by reason of accident, mistake, inadvertence, or urgent necessity, and without any wilful design to defraud the revenue, or to evade or delay the payment of the duty. Twelve calendar months from the first day of August then next were allowed to the delinquent party by that act to avail himself of that provision, and the section specifically points out the acts to be done by the party and the collector to render the instrument as valid as if it had been stamped at the time it was made, signed, or issued.

Original instruments, or a certified or duly proved copy thereof, duly stamped so as to entitle the same to be recorded, may under that act be presented to the clerk, register, or recorder, or other officer having charge of the original record, and such officer may, upon the payment of the lawful fee, make a new record thereof, and note upon the original record the fact that the error or omission in the stamping of the original instrument has been corrected pursuant to law, and the provision is that the original instrument, or such certified copy thereof, or the record thereof, may in that event be used in all courts and places, in the same manner and with like effect as if the instrument had been originally stamped.†

---

\* 18 Stat. at Large, 481–2.　　　　　† 14 Id. 143.

Errors or omissions of the kind which occurred or happened before the first day of August, 1866, might be remedied under that act at any time within twelve calendar months from that date, and subsequent errors and omissions of the kind might also be remedied in the same way at any time within twelve calendar months from the time the instrument, document, or paper was made, signed, or issued without being stamped as required by law, but it is quite clear that the case before the court does not fall within that proviso, as the application to the collector was not made in season to bring the case within either of those regulations.

Had legislation stopped there the ruling admitting the note in evidence would certainly be erroneous, but the act of the fourteenth of July, 1870, amends the preceding act by striking out the words sixty-six, in the third proviso, and inserting in lieu thereof the words seventy-one, whereby the collector of the proper district is still empowered to remit penalties of the kind occurring or happening under the circumstances described in the third proviso of the prior act.

Since the passage of that act it is conceded that the collector may remit the forfeiture therein imposed if it occurred " by reason of accident, mistake, inadvertence, or urgent necessity, and without any wilful design to defraud the United States of the stamp or to evade or delay the payment thereof," but it is insisted that the new provision does not operate retrospectively, that it does not empower the collector to remit the penalty for any such omission if it occurred prior to the passage of the act, but the court here is of a different opinion for several reasons.

Special attention is called in the first place to the peculiar phraseology of the new provision, which is that section one hundred and fifty-eight of the act of the thirtieth of June, 1864, as amended by the ninth section of the act of the thirteenth of July, 1866, be and is hereby amended as therein provided. Three amendments are then made in the last-named act, as follows: (1.) By striking out the words fifty dollars in the second proviso and inserting in lieu thereof the following: Double the amount of the tax remaining un-

paid, but in no case less than five dollars. (2.) By striking out the words sixty-six in the third proviso and inserting in lieu thereof the words seventy-one. (3.) By striking out the words sixty-seven in the last proviso and inserting in lieu thereof the words seventy-two.*

Section one hundred and fifty-eight of the act first named provided that the forfeiture, where the omission to affix the stamp was with the intent to evade the duty, should be two hundred dollars, but the succeeding act passed the next year reduced the forfeiture to fifty dollars.†

Such an omission subjected the party to a penalty of fifty dollars also under the act of the thirteenth of July, 1866, but the penalty under the present act cannot exceed a sum which is double the amount of the tax unless that sum is less than five dollars.

Legislation in respect to the amount of the forfeiture in the earlier acts of Congress upon the subject would have been unnecessary if it had not been intended to extend the jurisdiction of the collector or some other officer to delinquencies of the kind which arose under the acts of Congress therein mentioned. All agree that the collector might, within the period of time designated in those acts, remit such forfeitures or penalties for past delinquencies if the application, as before explained, was seasonably made, and the court is unanimously of the opinion that the better construction of the act under consideration is that Congress intended to give such delinquent party a further opportunity to remedy such errors and omissions on the terms and conditions prescribed in the new provision.

Extended argument in support of the conclusion does not seem to be necessary, as the reasons to support it are apparent from its statement. Grant all that and still it may be suggested that the ruling in this case was made before the present act was passed, and it must be admitted that the suggestion is correct, but the new act shows to a demonstration that the ruling in question has become immaterial, hav-

---

* 16 Stat. at Large, 257.        † 13 Id. 293; Ib. 481.

ing ceased to be prejudicial to the defendant, as the collector now possesses the power to do what he then did, that is, to affix the stamps to the note, remit the penalty, and make the proper memorandum of his doings; and it is so clear that the plaintiff would have a right to require those acts to be done if a new trial were ordered that the court is unhesitatingly of the opinion that the judgment ought not to be reversed for that cause; as the proper stamps were affixed to the instrument and the amount of the required duty was deposited in the treasury before the note was used as evidence.*

Where the case is brought here by a writ of error to a State court for re-examination the court is not inclined to reverse the judgment unless there is some substantial error to the prejudice of the complaining party, and especially not where it appears that the error has become immaterial and that the same party will be entitled to judgment if a new trial is granted. Payment of the stamp duty was made to the collector at the time he affixed the stamps to the note, and inasmuch as the government makes no complaint, and the whole transaction is characterized by good faith, the court is of the opinion that the judgment of the State court may be sustained.

II. Objection is also made that the note was not admissible as evidence because the indorsement was not stamped, but the court is of the opinion that the objection is without merit, as a stamp is not required to such a writing.†

III. Whenever a party in a suit upon a bill of exchange or promissory note is required to prove demand and notice or protest, he may comply with those conditions by proving that the opposite party waived the requirement.

---

* Campbell v. Wilcox, 10 Wallace, 422; Tobey v. Chipman, 13 Allen, 124; Corbin v. Tracy, 34 Connecticut, 326; U. S. v. Anderson, 9 Wallace, p. 68.

† Tilsley on Stamps, 172; Richards v. Frankum, 9 Carrington & Payne, 221; Penny v. Innes, 1 Crompton, Meeson & Roscoe, 439; Bacon v. Simpson, 3 Meeson & Welsby, 78; Edwards on Stamps (2d ed.), 140; Tilsley's Digest, 28.

Proof to that effect was offered in this case, which consisted of the usual memorandum signed by the party and written on the back of the note; and the statement in the bill of exceptions is that the defendant, when the note was offered, objected to the admissibility of that writing, but the court admitted it and the defendant excepted.

Satisfactory proof of waiver in such a case is in all respects equivalent in law to a compliance with the requirement.*

Such a waiver need not be in writing, as an oral declaration to that effect would be equally effectual, and it does not appear that any one of the internal revenue acts contains any requirement if it is in writing that it should be stamped, nor is any authority referred to as a support to the objection taken to the ruling of the court. On the contrary, the Supreme Court of California has decided the other way and this court is of the same opinion.†

JUDGMENT AFFIRMED.

---

* Taunton Bank *v.* Richardson, 5 Pickering, 444: 2 Starkie on Evidence, 274; Woodman *v.* Thurston, 8 Cushing, 157; Marshall *v.* Mitchell, 35 Maine, 221; Collins on Stamps, 30.

† Pacific Bank *v.* De Ro, 37 California, 542; Chitty on Stamps, 192 200