FLOURNOY, SHERIFF AND EX-OFFICIO TAX COLLECTOR, *v.* WIENER ET AL.

No. 252.   Argued February 4, 7, 1944.—Decided February 28, 1944.

*Mr. Leonard L. Lockard,* with whom *Mr. Eugene Stanley,* Attorney General of Louisiana, was on the brief, for appellant.

*Mr. Sidney L. Herold* for appellees.

By special leave of Court, *Assistant Attorney General Samuel O. Clark, Jr.,* with whom *Solicitor General Fahy, Messrs. Sewall Key, Carlton Fox,* and *Alvin J. Rockwell,* and *Miss Helen R. Carloss* were on the brief, on behalf of the United States, as *amicus curiae,* urging dismissal of the appeal and upholding the constitutionality of § 402 (b) of the Revenue Act of 1942. *Mr. Max Radin* argued the cause on behalf of the States of Arizona, California, Idaho, Nevada, New Mexico, Texas, and Washington, and the Oklahoma Tax Commission (with him on the brief were the Attorneys General of those States and *Mr. E. L. Mitchell*), and *Messrs. Joseph D. Brady, George Donworth, Charles E. Dunbar, Jr., Palmer Hutcheson, J. P. Jackson, Gerald Jones, Samuel H. Morris,* and *Harry C. Weeks* filed a brief, as *amici curiae,*—urging affirmance.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

This case comes here on appeal under § 237 (a) of the Judicial Code, 28 U. S. C. § 344 (a), from a judgment of the Supreme Court of Louisiana, appellant assigning as error that that court had held invalid, as in violation of the Fifth Amendment, § 402 (b) (2) of the Revenue Act of 1942, 56 Stat. 942. On considering the jurisdictional statement filed by appellant pursuant to Rule 12 of the Rules of this Court, we postponed decision of the jurisdictional questions to the argument on the merits.

Section 237 (a) of the Judicial Code authorizes an appeal to this Court from a judgment of the highest court of the state "where is drawn in question" the validity of a statute of the United States and the decision is against its validity.

The error assigned is therefore one cognizable on appeal. The question for our decision is whether, the state court having rested its decision and judgment upon two independent grounds, each adequate to support the decision but only one of which appellant has assigned as error on appeal to this Court, we have jurisdiction to decide either.

Appellees, children and sole legatees of Wiener, who had died a resident of Louisiana, leaving his widow surviving, brought the present proceeding in the District Court for the First Judicial District of Louisiana to establish the amount of the state inheritance tax on the interest acquired by them under the will of decedent. Under state law they cannot be placed in possession of the property inherited by them until they have paid the tax. Act No. 127 of the Extra Session of 1921 as amended by Act No. 44 of 1922; see § 3 of Act No. 119 of 1932. So far as material here, the amount of their liability for the tax depends upon the meaning and application of Act No. 119 of the Louisiana Acts of 1932, Louisiana Code of Practice, Arts. 996.89–996.94, and of § 402 (b) (2) of the Revenue Act of 1942. Act No. 119 directs the levy, in addition to existing inheritance taxes, of "an estate transfer tax upon all estates which are subject to taxation under the Federal Revenue Act of 1926." The Act provides that whenever the aggregate amount of all inheritance, succession, legacy and estate taxes actually paid to the several states of the United States in respect to any property owned by the decedent shall be less than 80% of the estate tax payable to the United States under the provisions of the Revenue Act of 1926, the difference between that amount and 80% shall be paid to Louisiana.[1]

---

[1] The purpose of the Act, declared by § 4, was to secure for the state the benefit of the credit allowed by § 301 (b) of the Revenue Act of 1926, 26 U. S. C. § 813 (b), which allowed the taxpayer a credit against the estate tax imposed by that Act for estate, inheritance or legacy

Section 402 (b) (2) of the Revenue Act of 1942 amends § 811 (e) of the Internal Revenue Code, which was derived from § 302 (e) of the Revenue Act of 1926, so as to include in the gross estate of decedent for purposes of the federal estate tax, property

"to the extent of the interest therein held as community property by the decedent and surviving spouse under the law of any State, Territory, or possession of the United States, or any foreign country, except such part thereof as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or from separate property of the surviving spouse."

Relying on these statutory provisions appellant, who is charged by state law with the duty of collecting the state inheritance tax, set up by his answer that the State of Louisiana is entitled to recover an inheritance tax equal to 80% of the basic federal estate tax, which by § 402 (b) (2) of the Revenue Act of 1942, is to be computed upon the entire community, and prayed judgment against appellees for an inheritance tax so computed.

To this answer appellees interposed pleas that the inheritance tax demanded of them, insofar as it is measured by the interest of the widow in the community, is unconstitutional for want of the uniformity prescribed by § 8 of Article I of the Constitution, and is a denial of due process, in contravention of the Fifth Amendment, in that it taxes property not belonging to decedent and not acquired by appellees under the will. The District Court sustained these pleas on the grounds assigned and gave judgment accordingly.

It will be observed that although the federal estate tax, laid on all the property included in the taxable estate

---

taxes actually paid to a state or territory or the District of Columbia, and provided that the total credit for such taxes should not exceed 80% of the federal estate tax payable.

of the decedent, is payable by the estate,[2] the effect of appellant's contention in both state courts was that Act No. 119 had, by virtue of § 402 (b) (2) of the Revenue Act of 1942, imposed an inheritance tax measured by the entire community property and had authorized collection of that entire tax from the decedent's legatees. The case thus presented not only the question whether a tax could constitutionally be imposed on the entire community property on the death of the husband, but also the further question, not necessarily governed by the federal Act, cf. *Riggs* v. *Del Drago,* 317 U. S. 95, whether the entire tax could be collected from those who inherit from the decedent, although they took no interest in the share of the community property retained by the surviving spouse.

On appeal to the state Supreme Court the Attorney General of the United States was allowed to intervene; on the argument there he urged that the validity of § 402 (b) (2) of the Revenue Act of 1942 was not in question, but that the only issue before the court was the validity of Act No. 119 under the Fourteenth Amendment, if construed and applied in the manner contended for by appellant. Appellees accordingly were allowed to amend their plea of unconstitutionality so as to plead in the alternative that if Act No. 119 were construed so as to impose on them an inheritance tax measured by the entire community property it would violate the Fourteenth Amendment.

The Supreme Court of Louisiana affirmed the judgment of the District Court but for different reasons. 203 La. 649, 14 So. 2d 475. It held that "the construction sought to be placed on Act No. 119 of 1932 by the tax collector . . . would render it violative of the due process guaran-

---

[2] The tax is made a lien on the gross estate, which includes the entire community property here, Internal Revenue Code § 827 (a), and is a personal liability of the wife to the extent of the interest acquired by her, Revenue Act of 1942, § 411.

teed by the 14th amendment to the Constitution of the United States, since such interpretation would result in the imposition of a tax upon those succeeding to the estate of a decedent measured in part by the property comprising the estate of another, to which the estate of the decedent is in no way related." For this conclusion it relied upon *Hoeper* v. *Tax Commission*, 284 U. S. 206, holding that a state graduated income tax measured by the joint income of husband and wife violated the Fourteenth Amendment. It said that the tax was there held invalid because "any attempt by a state to measure the tax on one person's property or income by reference to the property or income of another is contrary to due process of law as guaranteed by the Fourteenth Amendment."

The Court thus made an alternative decision that either Act No. 119 did not impose on appellees a tax on property not bequeathed to them or that if it did it violated the Fourteenth Amendment. But it also went on to hold that "the limitation placed upon the state by the Fourteenth Amendment is likewise placed on the Federal Government by the Fifth Amendment" and that § 402 (b) of the Revenue Act of 1942, which appellant, by interpretation of Act No. 119, had contended was the measure of the tax to be imposed on appellees, is likewise a violation of the Fifth Amendment if interpreted so as to tax the entire community property here.

Appellant, in his assignments of error here, made no mention of the ruling of the state Supreme Court that Act No. 119, as construed and sought to be applied by him, violates the Fourteenth Amendment. He assigned as error the Supreme Court's decision that § 402 (b) (2) of the Revenue Act of 1942 violates the Fifth Amendment. He also asserted that it had erred "in denying legal efficacy" to that provision of the Revenue Act which required the valuation of all the community property of decedent and his surviving spouse in the computation of the fed-

eral estate tax. But in his "Statement of the points on which he intends to rely," filed pursuant to paragraph 9 of Rule 13 of this Court, he stated, "the only issue before the Court, and the point on which he intends to rely is that the Act of Congress held by the Supreme Court of Louisiana to be unconstitutional, to-wit Section 402 (b) (2) of the Revenue Act of 1942, approved October 21, 1942, is constitutional and that the Supreme Court of Louisiana erred in holding said statute to be violative of the Fifth Amendment to the Federal Constitution."

Rule 9 of this Court's Rules requires the appellant in all cases to file assignments of error "which shall set out separately and particularly each error asserted," and paragraph 9 of Rule 13, requiring the statement of points to be relied upon, provides that "The Court will consider nothing but the points of law so stated." See also Rule 27, par. 6. It is a familiar rule, consistently followed, that upon appeal from a state court this Court will not pass upon or consider federal questions not assigned as error or designated in the points to be relied upon even though properly presented to and passed upon by the state court. *O'Neil* v. *Vermont,* 144 U. S. 323, 331; *New York* v. *Kleinert,* 268 U. S. 646, 651; *Herbring* v. *Lee,* 280 U. S. 111, 117; *Seaboard Air Line Ry. Co.* v. *Watson,* 287 U. S. 86, 91; *Southern Pacific Co.* v. *Gallagher,* 306 U. S. 167, 172; *Jones* v. *Opelika,* 316 U. S. 584, 592. The rule is the same in the case of applications for certiorari. Rule 38, par. 2; *General Pictures Corp.* v. *Western Electric Co.,* 304 U. S. 175, 179; *National Licorice Co.* v. *Labor Board,* 309 U. S. 350, 357.

There is a special reason why this practice should be followed here. Doubtless because of appellant's disclaimer, in his points to be relied upon, of a purpose to present any but the Fifth Amendment question, appellees have proceeded on argument and in briefs in this Court on the assumption that only the Fifth Amendment ques-

tion was before us. Appellant's only mention of the impact of the tax on appellees is to say that "they have been victimized by the state law not the federal law." And he has made no effort to sustain the constitutionality of the imposition by the state of the entire burden of the tax on appellees. This is important because on the present record the two questions as to the constitutionality of the state and federal statutes are materially different in point of substance and in kind. The Fifth Amendment is relevant only because the federal tax on community property is made the measure of the tax which Louisiana, not the federal government, imposes upon appellees. If the federal tax on community property infringes the Fifth Amendment then obviously that property is not "subject to taxation under the Federal Revenue Act" as the Louisiana Act requires, and there is wanting the taxable subject matter upon which the Louisiana statute purports to impose the tax, namely community property which is subject to a federal tax.

It is not the federal but the state statute which imposes the tax on appellees, and the Fourteenth Amendment question in this case is not merely that the state statute, like the federal statute, imposes the tax on a subject matter which is not constitutionally taxable, but that the state statute does something which, as we have seen, the federal statute does not do, namely imposes on appellees an inheritance tax which includes in its measure some of the community property which they do not receive. As already pointed out, this was the question raised by appellees' supplemental plea of unconstitutionality, allowed and decided by the Supreme Court of Louisiana. By it they challenged, as a violation of the Fourteenth Amendment, the imposition on them of an "inheritance tax" "based or measured upon the value of the entire community." Even though it were decided that the federal statute validly imposes the tax on decedent's estate with

its burden distributed among all those entitled to share in the estate as the state law may provide, see *Riggs* v. *Del Drago, supra,* the question would remain for decision whether the Fourteenth Amendment permits the particular distribution for which appellant contends, requiring appellees to bear all the tax although they share in only part of the estate on which it is laid.

But this question is not before us because appellant, by his statement of points to be relied on, has affirmatively excluded it from consideration on this appeal and has limited himself to the different question arising under the Fifth Amendment. In any case we ought not to consider it here because in reliance upon this declaration neither party has briefed or argued it in this Court. Rule 27, paragraph 6 declares that errors not urged in the briefs will be disregarded. And, independently of "technical" rules it is not the habit of this Court to decide important constitutional questions which the parties have not presented, briefed or argued.

It is apparent that the decision of the single question arising under the Fifth Amendment, cannot, in the present state of the record, be dispositive of the case. The only tax here sought to be imposed is the state inheritance tax authorized by Act No. 119. The state court having held that that Act is either inapplicable or, if applicable, is an infringement of the Fourteenth Amendment, any ruling we could make as to the validity of § 402 (b) (2) could afford no basis for affirming, modifying or setting aside the decision of the state court that by reason of the invalidity or inapplicability of Act No. 119, the tax demanded cannot be imposed.

Any determination which we might make of the Fifth Amendment question would thus leave unaffected the state court's judgment brought here for review. Our opinion on that subject would be advisory only, since there is nothing before us on which we could render a decision

that would have any controlling effect on the rights of the parties. Hence the case stands in the same posture as those in which we have repeatedly held that where the judgment of a state court rests in part on a non-federal ground adequate to support it, this Court will not consider the correctness of the decision which the state court also made of a federal question otherwise reviewable here. *Berea College* v. *Kentucky,* 211 U. S. 45, 53; *Enterprise Irrigation Dist.* v. *Canal Co.,* 243 U. S. 157, 163–4; *Lynch* v. *New York,* 293 U. S. 52, 54–5; *Fox Film Corp.* v. *Muller,* 296 U. S. 207, 210–11. In such a case this Court has said that it will not enter "a useless and profitless reversal" "where the same judgment will be rendered by the court below, after they have corrected the error in the federal question." *Murdock* v. *City of Memphis,* 20 Wall. 590, 634–5. Compare *Pugh* v. *McCormick,* 14 Wall. 361, 374. For like reasons we have refused to answer questions certified to us by a lower federal court where it appears that the answer cannot affect the result, *United States* v. *Buzzo,* 18 Wall. 125, 129; *United States* v. *Britton,* 108 U. S. 199, 207; *Lederer* v. *McGarvey,* 271 U. S. 342, 344. See also the rules stated in *New Orleans* v. *Emsheimer,* 181 U. S. 153; *New York Telephone Co.* v. *Maltbie,* 291 U. S. 645; *Lindheimer* v. *Illinois Tel. Co.,* 292 U. S. 151, 176; and in *Hirabayashi* v. *United States,* 320 U. S. 81, 85, and cases cited.

The cause is accordingly dismissed for want of jurisdiction. In the view we take of the case we do not reach the question whether the appeal should not also be dismissed because of doubt whether the decision of the Louisiana Supreme Court as to Act No. 119 rests on a holding that the Act violates the Fourteenth Amendment, or merely that it is inapplicable as a matter of construction of a state statute not reviewable here. With that left in doubt, we could not say that the decision of the state Supreme Court does not rest on a non-federal ground adequate to support

it. Compare *Lynch* v. *New York, supra,* 55; *Honeyman* v. *Hanan,* 300 U. S. 14; *Bakery & Pastry Drivers Local* v. *Wohl,* 313 U. S. 572; *New York ex rel. Rogalski* v. *Martin,* 320 U. S. 767, with *State Tax Commission* v. *Van Cott,* 306 U. S. 511; *Minnesota* v. *National Tea Co.,* 309 U. S. 551; *Standard Oil Co.* v. *Johnson,* 316 U. S. 481.

Appellant having assigned as error the decision of the Louisiana Supreme Court holding the federal Act invalid, the case is properly an appeal, and appellant could have included in his assignments of error any other denial of federal right whether or not capable in itself of being brought here by appeal. *Prudential Insurance Co.* v. *Cheek,* 259 U. S. 530, 547. Or he could have filed a petition for writ of certiorari in addition to his appeal. *Columbus & Greenville Ry. Co.* v. *Miller,* 283 U. S. 93, 98. But since he failed to raise or brief in this Court any question as to the validity of the Louisiana statute under the Fourteenth Amendment, we have no jurisdiction of the case either on certiorari or on appeal, and there is no occasion for the application of Judicial Code, § 237 (c), 28 U. S. C. § 344 (c). See Robertson and Kirkham, Jurisdiction of the Supreme Court of the United States, p. 40, and cases cited.

*Dismissed.*

MR. JUSTICE FRANKFURTER, with whom MR. JUSTICE ROBERTS and MR. JUSTICE JACKSON concur, dissenting:

If this appeal were dismissed summarily I should remain silent. But opinions on the jurisdiction of this Court must serve as guides for the bar as well as for all other courts. Therefore the reasons for my inability to concur in the Court's views, involving as they do general considerations, call for somewhat detailed expression.

1. The law of the jurisdiction of this Court raises problems of a highly technical nature. But underlying their solution are matters of substance in the practical working

of our dual system and in the effective conduct of the business of this Court. While therefore the disposition of jurisdictional questions involves specialized knowledge, we are not dealing with problems the answers to which depend on the use of talismanic words or on the observance of rigid forms. On no one I venture to believe has the conviction stronger hold than on me that it is important to postpone constitutional adjudications and therefore constitutional conflicts until they are judicially unavoidable, or to keep them, when unavoidable, within the strict confines of a specific case. That is why we should be uncompromising in observing the limits of our authority and should avoid laxity in assuming jurisdiction. See 49 Harv. L. Rev. 68, 90–107. But the duties of this Court do not hang on the thread of mere verbalism.

2. We do not review a case from a state court which can be supported on a non-federal ground because federal authority ought not to intrude upon the domain of the States. This far-reaching political consideration was decisive even after the Civil War in settling the rule that not only do we not review a case from a state court that can rest on a purely state ground, but we do not even review state questions in a case that is properly here from a state court on a federal ground. *Murdock* v. *Memphis,* 20 Wall. 590.

3. The requirement of assignment of errors in order to invoke our reviewing power rests on a wholly different consideration. "The purpose is to enable the court as well as opposing counsel, readily to perceive what points are relied on." *Seaboard Air Line Ry. Co.* v. *Watson,* 287 U. S. 86, 91. Of course, when the error complained of is a rejection of a claim of the invalidity of a state statute under the United States Constitution, the claim must have been effectively pressed before the state court and rejected by it. But the requirement is not for some abra-

cadabra. The nub of the matter is found in *Bryant* v. *Zimmerman*, 278 U. S. 63, 67:

"There are various ways in which the validity of a state statute may be drawn in question on the ground that it is repugnant to the Constitution of the United States. No particular form of words or phrases is essential, but only that the claim of invalidity and the ground therefor be brought to the attention of the state court with fair precision and in due time. And if the record as a whole shows either expressly or by clear intendment that this was done, the claim is to be regarded as having been adequately presented."

4. These general considerations bring us to the particular case. Its reviewability here is questioned on numerous grounds. Any one of them would be conclusive. Apparently, however, a cloud of unreviewability is compounded by intermingling doubts on several scores. If the judgment of the Supreme Court of Louisiana can rest on a non-federal ground there is an end of the matter. If that court went off on the constitutionality of a federal statute when that statute was not drawn into question again there is an end to the matter. If the judgment in fact rested on the validity of a state statute urged to be repugnant to the United States Constitution, the case could come here but only if the claim of invalidity was properly presented and duly rejected by the state court. And even then such error could be urged here only if brought before this Court by revealing assignment of errors. If that requirement were not met, again the appeal would call for dismissal.

5. This controversy "concerns the constitutional validity of an act of Congress"—§ 402 (b) (2) of the Revenue Act of 1942, 56 Stat. 798, 942—"which is directly drawn in question. The decision depends upon the determination of this issue." *Smith* v. *Kansas City Title Co.*, 255

U. S. 180, 201.  This is so, that is, unless we wish to over-rule the *Kansas City Title* case as well as the recent unanimous decision in *Standard Oil Co.* v. *Johnson,* 316 U. S. 481, and adopt the dissenting views of Mr. Justice Holmes in the *Kansas City Title* case, *supra* at 213.  In any event, however, the decision of the Louisiana Supreme Court cannot be supported on a non-federal ground and does involve the validity of a state statute under the United States Constitution.  Finally the assignment of errors, the order allowing appeal and the statement of points on which appellant relied satisfy the reasons for our Rules 9 and 13 (9).  All three considerations are intertwined in the distinctive circumstances of this case and they establish our jurisdiction, once the cause of this litigation is kept in mind and our jurisdictional requirements are not turned into formalism "run riot."

6. What then was in issue in this litigation and what issue was determined in the judgment that was brought here?  The tax collector claimed that "the heirs of Sam Wiener, Jr., owe an inheritance tax on the entire community estate rather than upon the one-half interest in the community inherited by them" for the reason that

"by virtue of Act No. 119 of the Legislature of Louisiana for the year 1932, the State of Louisiana is ultimately entitled to recover an inheritance tax against this estate which is equal to eighty per cent of the basic federal tax as fixed by the Federal Revenue Act of 1926,"

and that

"Congress in the Revenue Act of 1942, (Title IV, Sec. 402A, 56 Statutes 798, Title 26, Sec. 811, U. S. C. A.) provides that the basic Federal Estate Tax is computed upon the entire community and accordingly, the State of Louisiana is entitled to an amount equal to eighty per cent of the basic Federal Estate Tax so calculated."  (R. 8)

The claim of the State for an inheritance tax in a sum equal to 80% of the tax due to the Federal Government as

computed in part under § 402 (b) (2) was thus based on the interdependence between the Louisiana Act No. 119 and § 402 (b) (2) of the Revenue Act of 1942. The latter was incorporated by reference into the former. The two became inseparable for purposes of construction—in a case like the present a decision involving Act No. 119 inescapably depended upon the determination of the validity of § 402 (b) (2).[1] Such was the issue tendered by the State, and issue was joined by the appellees' plea of unconstitutionality:

"notwithstanding anything to the contrary that may be contained in the Federal Revenue Act of 1942, approved on October 21, 1942, there may not be included in the estate of the decedent, subject to the Federal Estate Tax (and consequently subject to the provisions of the State Inheritance Tax under Act 119 of 1932) any property except that which was owned by the decedent at the instant of his death, and by his death transmitted to his heirs." (R. 9)

---

[1] Section 2 of Act No. 119 of the Louisiana Acts of 1932 provides that "Whenever the aggregate amount of all inheritance, succession, legacy and estate taxes actually paid to the several states of the United States in respect to any property owned by such decedent shall be less than eighty per cent (80%) of the estate tax payable to the United States under the provisions of the said Federal Revenue Act of 1926, but not otherwise, the difference between said amount and said eighty per cent (80%) shall be paid to the State of Louisiana."

Section 302 of the Revenue Act of 1926 as amended by § 402 (b) (2) of the Revenue Act of 1942, includes in the gross estate property, "To the extent of the interest therein held as community property by the decedent and surviving spouse under the law of any State, Territory, or possession of the United States, or any foreign country, except such part thereof as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or from separate property of the surviving spouse. In no case shall such interest included in the gross estate of the decedent be less than the value of such part of the community property as was subject to the decedent's power of testamentary disposition." 44 Stat. (part 2) 9, 70; 56 Stat. 798, 942.

In this plea the constitutional invalidity of the federal act was challenged as follows:

"Such statutory provision is in contravention of and violative of the Fifth Amendment to the Constitution of the United States, in that its application would deprive these appearers of their property without due process of law by its imposition of taxes upon them, based both upon an arbitrary inclusion in the estate of the decedent of property which did not belong to him and upon the application thereto of graduated rates based upon values arrived at by reference to such other property." (R. 10)

7. Putting to one side the claim of unconstitutionality of § 402 (b) (2) for want of uniformity, this is the issue which persists throughout the litigation—the issue arising from the claim of constitutional invalidity under the Fifth Amendment of the method of computing the federal estate tax according to the Amendment of 1942 inasmuch as the state inheritance tax is concededly ascertained through the ascertainment of the federal estate tax. This was the issue raised by the pleadings in the First Judicial District Court of Louisiana; this was the issue tendered by the agreed statement of facts before that court (R. 11, particularly par. 4); this was the issue which that court decided against the State because it found a statute of Congress "violative of the Fifth Amendment to the Constitution of the United States in that its application here would deprive the heirs of the decedent of their property without due process of law" (R. 13); this was the issue formulated by both parties in their appeal to the Supreme Court of Louisiana (R. 14, 16); on the basis of this issue that court invited the Attorney General of the United States to appear as *amicus curiae*. After the Attorney General, so appearing, suggested for the first time that "the tax liability here in issue is only that imposed by the state statute," appellees

"Without in any manner conceding the correctness of that position, but on the contrary expressly reaffirming that this cause involves and depends upon the constitutionality of the federal statute,"

amended their plea of unconstitutionality, with the State's consent, by adding also an attack upon the validity of the state statutes "either alone or in conjunction with the federal statute" (R. 18).

By this process the case reached the Supreme Court of Louisiana. No one can read that court's opinion and be left in any doubt that Louisiana Act No. 119 of 1932 and § 402 (b) (2) of the Revenue Act of 1942 were treated inseparably and the validity of the former made to depend on the fate of the latter. Two passages give the pith of the opinion:

"Now, because of the Congressional adoption of Section 402 (b) (2) of the Revenue Act, amending Section 811 (e) of the Internal Revenue Code of 1939, 26 U. S. C. A. Int. Rev. Code § 811 (e), the tax collector of Caddo parish is contending inheritance and estate taxes in this state, under Act No. 119 of 1932, must be computed on the basis established in that section."

"we are asked to place an interpretation on Act No. 119 of 1932 and Section 402 (b) (2) of the Revenue Act of 1942 that would result in the inclusion in the estate of the managing partner of an interest in the community partnership to which he never had any claim and which was, in fact, during his lifetime and is now, owned by his wife." 203 La. 649, 656, 669–70.

On this showing the lower court concluded that § 402 (b) (2) offends the Due Process Clause of the Fifth Amendment, and therefore the reliance of the State upon § 402 (b) (2) as read into Act No. 119 made the latter Act offensive to the Due Process Clause of the Fourteenth Amendment.

8. The invalidity, because wanting in due process, of § 402 (b) (2) infused into Act No. 119, is the issue that runs like a silver thread unbroken and unalloyed through this litigation as it took its course from the First Judicial District Court of Louisiana to the State Supreme Court and from there to this Court. This makes it abundantly clear why the errors were assigned as they were—claims of error in holding that § 402 (b) (2) is unconstitutional and in denying

"legal efficacy to the provisions of Section 402 (b) (2) of the Federal Revenue Act of 1942 as requiring the valuation of all of the community property standing in the name of the decedent, Sam Wiener, Jr., in the computation of the federal basic estate tax; and, consequently, in the computation of the inheritance tax due to the State of Louisiana which, under the statute of the state, is required to be eighty percent of the amount of the federal basic estate tax." (R. 32, Assignment of Errors, 2.)

Because such was the issue and because the judgment of the Supreme Court of Louisiana determined that issue, the order allowing appeal recites that "there was drawn in question the validity of Section 402 (b) (2) of the Federal Revenue Act of 1942," (R. 33). Such having been the issue and such its determination, appellant naturally set it forth in his statement of the points on which he intended to rely. (R. 35)

9. If a federal claim was drawn in question in *Smith* v. *Kansas City Title Co., supra,* and *Standard Oil Co.* v. *Johnson, supra,* it was not less drawn in question in this case. If the earlier two decisions are to continue to stand, I am unable to make a differentiation between them and the record before us.[2] Much is to be said for the reasoning

---

[2] The *Kansas City Title* case was a suit by a Missouri shareholder of a Missouri trust company to enjoin the directors from buying bonds of Federal Land Banks and Joint Stock Land Banks on the

of Mr. Justice Holmes in the *Kansas City Title* case in urging that the incorporation of a federal act into a state law nevertheless makes the suit, for purposes of our jurisdiction, one arising under the state and not under the federal law. But his view was rejected. In the recent *Standard Oil* case we had an opportunity to adopt his view and reject that of the Court in the *Kansas City Title* case. Instead, we unanimously applied the reasoning of

---

theory that the statutes authorizing the banks and bonds being unconstitutional, the bonds were not lawful securities for investment purposes. The Court held that this was a statement of a cause of action arising under the laws of the United States. The meaning of the Court's holding is clearly indicated by the view which was rejected. "The defendant is a Missouri corporation and the right claimed is that of a stockholder to prevent the directors from doing an act, that is, making an investment, alleged to be contrary to their duty. But the scope of their duty depends upon the charter of their corporation and other laws of Missouri. If those laws had authorized the investment in terms the plaintiff would have had no case, and this seems to me to make manifest what I am unable to deem even debatable, that, as I have said, the cause of action arises wholly under Missouri law. If the Missouri law authorizes or forbids the investment according to the determination of this Court upon a point under the Constitution or acts of Congress, still that point is material only because the Missouri law saw fit to make it so." 255 U. S. at 214.

In the *Standard Oil* case, a ruling by a state court that United States Army Post Exchanges were not federal agencies in deciding the applicability of a state sales tax which did not apply to sales to Government agencies, was held to be a decision of a federal question reviewable here. "For post exchanges operate under regulations of the Secretary of War pursuant to federal authority. These regulations and the practices under them establish the relationship between the post exchange and the United States Government, and together with the relevant statutory and constitutional provisions from which they derive, afford the data upon which the legal status of the post exchange may be determined. It was upon a determination of a federal question, therefore, that the Supreme Court of California rested its conclusion that, by § 10, sales to post exchanges were not exempted from the tax." 316 U. S. at 483.

the *Kansas City Title* case that where a decision under state law necessarily involves the construction or validity of federal law the determination of such federal law in the application of state law gives rise to a federal question for review here.

10. In any event the decision below did not go off on a non-federal ground. It cannot be said of this case as was true of a case like *Fox Film Corp.* v. *Muller,* 296 U. S. 207, 211, that the case "in effect, was disposed of before the federal question said to be involved was reached. *Chouteau* v. *Gibson,* 111 U. S. 200; *Chapman* v. *Goodnow,* 123 U. S. 540, 548. A decision of that question then became unnecessary; and whether it was decided or not, our want of jurisdiction is clear." We have seen that the issue that was framed after the tax collector's return to the rule was exclusively a question of constitutionality under the United States Constitution, and the judgment of the two State Courts was a determination of that issue. There never was any suggestion that the controversy involved merely a construction of the state law except a construction that necessarily raised a federal constitutional question. It was deemed to be a question under the Fifth Amendment of the Constitution until the Attorney General of the United States suggested that the Fourteenth Amendment was at stake. But even on that assumption, the case was decided on a federal and not on a non-federal ground, namely the invalidity of the State's claim because of want of due process under the Fourteenth Amendment. Since, however, the claim of invalidity was sustained we can take the case only on certiorari. § 277 (b) of the Judicial Code.

11. The question then is whether the federal ground was adequately assigned to satisfy our Rules 9 and 13 (9).[3]

---

[3] Rule 9: "Where an appeal is taken to this court from any court, the appellant shall file with the clerk of the court below, with his petition for appeal, an assignment of errors, which shall set out separately

This brings us again to the rationale of these rules. "The purpose is to enable the Court as well as opposing counsel, readily to perceive what points are relied on." *Seaboard Air Line Ry. Co.* v. *Watson*, 287 U. S. 86, 91. Is there any doubt that everybody knew what was the issue on which the Supreme Court of Louisiana passed and what was the issue on which the State of Louisiana and the Government desire us to reverse that decision? *Seaboard Air Line Ry. Co.* v. *Watson, supra,* illustrates the true functions of assignment of errors and affords an example of the kind of situations in which the rule comes into operation. It is not fair to the administration of justice—to the work of this Court and counsel taking part in its business—that appeal papers here should not enable us to know clearly and quickly what it is that is complained of and that we are asked to undo:

"The substitution of vague and general statement for the prescribed particularity sets the rule at naught. . . . And as the rule makes for convenience and certainty in the consideration of cases the court may, and generally it will, disregard a specification that is so uncertain or otherwise deficient as not substantially to comply with the rule, even if the opposing party raises no question and treats it as adequate. The quoted assignment amounts merely to a complaint that the supreme court erred in not re-

and particularly each error asserted. No appeal shall be allowed unless such an assignment of errors shall accompany the petition."

Rule 13 (9): "When the record is filed, or within fifteen days thereafter, the appellant shall file with the clerk a definite statement of the points on which he intends to rely and a designation of the parts of the record which he thinks necessary for the consideration thereof or a designation of those parts considered unnecessary, whichever is more convenient, with proof of service of the same on the adverse party. . . . The statement of points intended to be relied upon and the designations of the parts of the record to be printed shall be printed by the clerk with the record. . . . The court will consider nothing but the points of law so stated. . . ."

versing the judgment of the trial court because 'in the trial of this case' the 'scope and effect' of the section deprived appellant of its property in violation of both the due process and equal protection clauses. An allegation of error could scarcely be more indefinite. It does not identify any ruling at the trial or specify any basis for the assertion of deprivation of constitutional right. It presents no question for our consideration." *Seaboard Air Line Ry. Co.* v. *Watson, supra* at 91.

In this case, unlike the *Watson* case, there was not a "vague and general statement," an "indefinite" allegation of error. From beginning to end all concerned knew the precise issue that this litigation raises—whether § 402 (b) (2) meets the guaranty of due process, in view of the dependence of the state act upon that federal provision. Surely we would have to take this case if Louisiana had specifically assigned as error the view that the Supreme Court of Louisiana took of the Fourteenth Amendment in relation to taxing community property. But since, as the Louisiana Supreme Court said, the issue under the Fourteenth Amendment is precisely the same in this situation as that under the Fifth Amendment, to throw out the case because "Fourteenth Amendment" was not written is to make our jurisdiction the slave of words.

12. If the decision below can really be said to rest on a non-federal ground, no assignment of errors could cure the defect. But it does not rest on a non-federal ground. It rests on a federal ground—the federal ground that is written on almost every page of the record.

13. Nor should we avoid jurisdiction by creating an issue which "the parties have not presented, briefed or argued" for the very good reason that it is not in the case. In brief, it is suggested that even assuming the tax on the whole community is valid, the question remains whether the appellees as legatees of half the community can be made to bear the whole tax. That issue is excluded from

the case. The amended plea of unconstitutionality did not raise a new issue but merely gave a new label—the Fourteenth Amendment—to the issue they tendered under the Fifth Amendment, dependence on which they reaffirmed. For the appellees, in the petition to prove the will, have assumed the full liability for whatever taxes are constitutionally due from the estate. We ought not to create a constitutional grievance which the parties themselves have never entertained in order to avoid adjudication of the only question which has been in the case from the beginning.