455 P.2d 459.

SWIFT & COMPANY, a corporation,
Appellant,

v.

STATE TAX COMMISSION of Arizona, L. Waldo DeWitt, Chairman and Bob Kennedy and John M. Hazelett, Members of the State Tax Commission of Arizona, Appellees.

No. 1 CA–CIV 671.

Court of Appeals of Arizona.

June 17, 1969.

Rehearing Denied July 28, 1969.
Review Granted Sept. 30, 1969.

Gust, Rosenfeld & Divelbess, by John C. Wesley, Phoenix, for appellants.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Former Atty. Gen., James D. Winter, Asst. Atty. Gen., for appellees.

STEVENS, Judge.

Swift & Company filed a suit to recover back taxes which it had paid. The trial court ruled against the taxpayer and this appeal followed.

The issue before the Court is whether a company which sells food to the base exchanges, the commissioned officers' messes, and the commissaries on military installations in the State of Arizona is required to pay the Transaction Privilege Taxes and the Education Excise Taxes. The case was resolved in the trial court by granting the motion for summary judgment filed by the Tax Commission and denying the motion for summary judgment filed by Swift & Company. Neither party disputes any of the facts. This case is before us on a matter of law.

The parties agree that the case of Standard Oil of California v. Johnson, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942) establishes that the foregoing are "arms of the government deemed by it essential for

the performance of governmental functions" and that they partake of governmental immunities. (316 U.S. 485, 62 S.Ct. at 1170, 86 L.Ed. at 1616.) In this status, the State of Arizona may not require that exchanges, messes and commissaries be licensed and the State may not collect Transaction Privilege Taxes or Education Excise Taxes from exchanges, messes or commissaries in relation to sales of food and sales of other items by these agencies to individuals.

In Arizona, wholesalers do not pay these taxes on their wholesale sales. This requirement was eliminated in 1937. Moore v. Arizona Box Company, 59 Ariz. 262, 126 P.2d 305 (1942) (See page 265 of 59 Ariz., 126 P.2d 307). We quote from the affidavits in support of the Swift & Company motion for summary judgment. The food supervisor of the base exchanges stated:

"As such Food Supervisor I oversee and control the purchase, preparation and sale of all foods purchased by the Base Exchange at Luke Air Force Base. In addition, I solicit bids from food suppliers on behalf of the Base Exchanges at Williams Air Force Base and Davis-Monthan Air Force Base and for the Post Exchange at Fort Huachuca.

"During the years of my tenure, the Luke Air Force Base Exchange has purchased many items of meat and dairy products from Swift & Company. All of these products have been utilized by the Exchange in the preparation of meals to be served in our cafeteria, or at our snack bars, or from our mobile unit, which drives around the Base. After any preparation that may be necessary to put the products in a consumable state, they are then sold for consumption to such individual purchasers as are authorized by law and regulation to patronize the Exchange facilities.

"Within my personal knowledge, all such purchases by the Luke Air Force Base Exchange from Swift & Company are made for the purpose of reselling these products as described in the preceding paragraph."

The Club Manager of the officers' mess stated:

"The Officers' Club makes periodic purchases of meats, meat products and dairy products from Swift & Company. These items are prepared in our kitchen for sale to and consumption on the premises by the individual members of the Club and their guests in the dining room and snack bar.

"All foods purchased by the Officers' Club from Swift & Company are purchased for the purpose of reselling the same, after any necessary preparation, to Club patrons."

The Commissary Officer established that no food purchased locally from Swift & Company was used to satisfy "the troop feeding requirements." The items in question which were sold by Swift & Company were purchased for the retail store of the commissary. This phase of the commissary operation was described as follows:

"The Retail Store carries food and hard and soft goods for sale to active and retired military personnel and their families. The Commissary at Luke Air Force Base contracts directly for most of the items carried in the Retail Store. Swift & Company is one of the suppliers to the Retail Store with which the Commissary makes direct contracts. Except for a very small portion (worth perhaps $5.00 to $10.00 a month) which occasionally goes to the Base Hospital, and for which the Commissary is reimbursed, all foods purchased by the Commissary from the local offices of Swift & Company are purchased for the purpose of reselling the same to the Commissary patrons in the Retail Store. None of the food purchased from Swift & Company locally is used for troop feeding requirements."

During the period of 1 March, 1961 to 31 December, 1964 Swift & Company paid taxes in the sum of $16,524.43. The Tax Commission conducted an audit and made

an additional assessment in the sum of $19,191.36. The former amount was paid by Swift & Company without the same being paid under protest. The latter amount established by the audit was protested, was paid under protest, and all of the statutory procedures for the preservation of the rights of Swift & Company were followed. There have been some legislative changes in these tax laws and we will state the statutes as they existed during the audit, unless otherwise noted.

The obligation to pay Education Excise Taxes finds its basis in the provisions of the Privilege Transaction Tax statutes. A.R.S. § 42–1361. Under these circumstances our references will be limited to the Privilege Transaction Tax statutes.

A sale at retail was defined in § 1(k) of Ch. 77 of the Laws of 1935 as follows:

> "The term 'retail' when used in this article, shall mean the sale of tangible personal property for consumption and not for resale."

Section 1(*l*) of the same Act was as follows:

> "The term 'wholesaler' or 'jobber' when used in this article shall mean any person who sells tangible personal property for resale and not for consumption by the purchaser."

The definitions contained in Ch. 21 of the Laws of 1960 are controlling in relation to this case. These are found in section 1 of the chapter which is a revision of A.R.S. § 42–1301. There were further amendments in 1968. As found in Chapter 21, we find the following definitions as a portion of A.R.S. § 42–1301.

> "12. 'Retailer' includes every person engaged in the business of making sales at retail * * *."

> "13. 'Sale' means any transfer of title or possession * * * by any means whatever, of tangible personal property, for a consideration * * *."

> "14. 'Sale at retail' means a sale for any purpose other than for resale in the form of tangible personal property * * *."

> "15. 'Tangible personal property' means personal property which may be seen, weighed, measured, felt, touched or is in any other manner perceptible to the senses."

> "16. 'Taxpayer' means any person liable for any tax imposed by this article."

> "18. 'Wholesaler' or 'jobber' means any person who sells tangible personal property for resale and not for consumption by the purchaser."

We do not believe the deletion of the phrase "for consumption," as such phrase appeared in the 1935 definition of "retail" to be significant. It would appear that the commissaries, exchanges and messes come within the subsection 12 definition of a "retailer" except for the fact that they are not taxpayers under subsection 16.

During the period in question A.R.S. § 42–1312, subsec. A related the obligation to pay taxes to " * * * the business of selling any tangible personal property whatever at retail * * *."

After June 30, 1956, A.R.S. § 42–1321, subsec. C imposed a tax " * * * upon any sale of tangible personal property made directly to the United States government, its departments or agencies, which is not exempt under the provisions * * *." This section is relied upon heavily by the Tax Commission.

Section 42–1305 A.R.S. states:

> "The commission is authorized and directed to formulate rules and regulations and prescribe forms and procedure necessary to the efficient enforcement of this article."

Pursuant to this authority and in 1956, the Tax Commission adopted the following regulations:

> "2.18 *Sales to the United States*
>
> All sales to the United States government, its departments, or agencies, are retail sales, being sales to a consumer, and vendors making such sales are required to report and pay the tax thereon as retail sales. * * *."

"2.18.3 *Post Exchange or Canteens in Federal Areas*

A sale to a post exchange or canteen operated as a Federal instrumentality is deemed to be a sale to a consumer and is therefore subject to the Transaction Tax less the 50% deduction. Even though the PX or canteen resells most of the products purchased, as a Federal instrumentality it is not required to be licensed or to report and pay a tax on such sales either pursuant to the Transaction or Use Taxes."

"2.18.4 *Officer's Clubs in Federal Area*

Officer's clubs, non-commissioned officer's clubs, and other clubs of military personnel operated in a Federal area are deemed to be purchasers and consumers for their members and are not engaging in business or in making sales at retail in the ordinary course of business. Sales made to such clubs are sales at retail subject to the 50% deduction."

## NATURE OF THE USE BY THE GOVERNMENTAL AGENCIES

It seems clear to us that "but for" the fact that the sales by the governmental agencies in question cannot be taxed, that these sales by exchanges, commissaries and messes to military and civilian personnel are retail sales. "Title" and "possession" "of tangible personal property" passes "for a consideration" in connection with each transaction. Subsection 13. The sales by these agencies are sales at retail, being sales "other than for resale." Subsection 14. The items are clearly tangible personal property as defined in subsection 15. The purpose for which these agencies buy from Swift & Company is for resale and when Swift & Company sells to these agencies the sales by Swift & Company are wholesale sales within subsection 18.

## THE REGULATIONS

■ In the event that the regulations are controlling the judgment must be affirmed. Regulations of long standing are persuasive as to their validity. City of Mesa v. Killingsworth, 96 Ariz. 290, 394 P.2d 410 (1964). However, the fact that regulations are of long standing does not in and of itself establish their validity. The clear statutory language is controlling. Long v. Dick, 87 Ariz. 25, 347 P.2d 581, 80 A.L.R.2d 949 (1959); Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268, 105 A.L.R. 756.

■ We hold that the fact that it is beyond the power of the state to tax the resales by these agencies does not change the character of the resales as defined by the statute. We hold that the regulations in question are not valid insofar as they purport to impose taxes upon wholesalers who sell at wholesale to these governmental agencies.

## THE TAXES PAID UNDER PROTEST

We hold that the trial court was in error failing to permit Swift & Company to recover the taxes paid under protest.

## TAXES NOT PAID UNDER PROTEST

Swift & Company urges that it should be permitted to recover the $16,524.43 even though these sums were not paid under protest. The appellant relies upon A.R.S. § 42–1326. The guiding principle of this section is found in the first sentence which reads:

"If, upon examination of a monthly return made under this article, it appears that an amount of tax has been paid in excess of the tax lawfully due, then the excess amount shall be credited against any tax then due from such taxpayer under *any other monthly return.*"

■ The section further authorizes credit vouchers and sets forth certain procedures. We are not informed as to whether regulations have been adopted implementing this section. We considered this section in the case of Bodco Building Corporation v. Arizona Tax Commission, 5 Ariz.App. 589, 429 P.2d 476 (1967) and held that the section did not negate the require-

14

ment of payment under protest. In our opinion if there is no dispute as to the tax liability or as to the rate of the tax and the overpayment was made through an error or through inadvertence then relief could be sought pursuant to this section. In our opinion it cannot be applied where as here, there is a contest as to the obligation to pay the tax.

This cause is affirmed as to the denial of the claim of Swift & Company to recover the $16,524.43. This cause is reversed as to the judgment which denied recovery of the sum of $19,191.36. The issuance of the mandate in this cause shall constitute a directive to grant the Swift & Company motion for summary judgment in relation to the taxes paid under protest.

DONOFRIO, C. J., and CAMERON, J., concur.