STANDARD OIL COMPANY OF CALIFORNIA *v.*
JOHNSON, TREASURER OF CALIFORNIA.

No. 1125.   Argued May 5, 1942.—Decided June 1, 1942.

*Mr. Francis R. Kirkham,* with whom *Messrs. Felix T. Smith* and *Sigvald Nielson* were on the brief, for appellant.

*Mr. Adrian A. Kragen,* Deputy Attorney General of California, with whom *Messrs. Earl Warren,* Attorney General,

and *H. H. Linney,* Assistant Attorney General, were on the brief, for appellee.

*Solicitor General Fahy, Assistant Attorney General Clark, Judge Advocate General Myron C. Cramer,* and *Messrs. Sewall Key, Arnold Raum, Alvin J. Rockwell,* and *Fred W. Llewellyn* filed a brief on behalf of the United States, as *amicus curiae,* urging dismissal of the appeal.

MR. JUSTICE BLACK delivered the opinion of the Court.

The California Motor Vehicle Fuel License Tax Act [1] imposes a license tax, measured by gallonage, on the privilege of distributing any motor vehicle fuel. Section 10 states that the Act is inapplicable "to any motor vehicle fuel sold to the government of the United States or any department thereof for official use of said government." The appellant, a "distributor" [2] within the meaning of the Act, sold gasoline to the United States Army Post Exchanges in California. The State levied a tax, and the appellant paid it under protest. The appellant then filed this suit in the Superior Court of Sacramento County seeking to recover the payment on two grounds: (1) that sales to the Exchanges were exempt from tax under § 10; (2) that, if construed and applied to require payment of the tax on such sales, the Act would impose a burden upon instrumentalities or agencies of the United States contrary to the Federal Constitution. Holding against the appellant on both grounds, the trial court rendered judgment for the State. The Supreme Court of California affirmed. 19 Cal. 2d 104, 119 P. 2d 329. Since validity of the state statute as construed was drawn in question on

---

[1] Cal. Stats. 1923, pp. 572, 573, 574; 1927, p. 1309; 1933, pp. 1636, 1637; 1937, p. 2219.

[2] Section 7 of the Act provides: "For the purposes of this act all motor vehicle fuel sold, donated, consigned for sale, bartered or used shall be deemed to be distributed. . . ."

the ground of its being repugnant to the Constitution, we think the case is properly here on appeal under § 237 (a) of the Judicial Code.

Since § 10 of the California Act made the tax inapplicable "to any motor vehicle fuel sold to the government of the United States or any department thereof," it was necessary for the Supreme Court of California to determine whether the language of this exemption included sales to post exchanges. If the court's construction of § 10 of the Act had been based purely on local law, this construction would have been conclusive, and we should have to determine whether the statute so construed and applied is repugnant to the Federal Constitution. But in deciding that post exchanges were not "the government of the United States or any department thereof," the court did not rely upon the law of California. On the contrary, it relied upon its determination concerning the relationship between post exchanges and the Government of the United States, a relationship which is controlled by federal law. For post exchanges operate under regulations of the Secretary of War pursuant to federal authority. These regulations and the practices under them establish the relationship between the post exchange and the United States Government, and together with the relevant statutory and constitutional provisions from which they derive, afford the data upon which the legal status of the post exchange may be determined. It was upon a determination of a federal question, therefore, that the Supreme Court of California rested its conclusion that, by § 10, sales to post exchanges were not exempted from the tax. Since this determination of a federal question was by a state court, we are not bound by it. We proceed to consider whether it is correct.

On July 25, 1895, the Secretary of War, under authority of Congressional enactments [3] promulgated regulations

---

[3] 16 Stat. 315, 319; 18 Stat. 337.

providing for the establishment of post exchanges.[4] These regulations have since been amended from time to time and the exchange has become a regular feature of Army posts. That the establishment and control of post exchanges have been in accordance with regulations rather than specific statutory directions does not alter their status, for authorized War Department regulations have the force of law.[5]

Congressional recognition that the activities of post exchanges are governmental has been frequent. Since 1903,[6] Congress has repeatedly made subtantial appropriations to be expended under the direction of the Secretary of War for construction, equipment, and maintenance of suitable buildings for post exchanges. In 1933 and 1934, Congress ordered certain moneys derived from disbanded exchanges to be handed over to the Federal Treasury.[7] And in 1936, Congress gave consent to state taxation of gasoline sold by or through post exchanges, when the gasoline was not for the exclusive use of the United States.[8]

The commanding officer of an Army Post, subject to the regulations and the commands of his own superior officers, has complete authority to establish and maintain an exchange. He details a post exchange officer to manage its affairs. This officer and the commanding officers of the various company units make up a council which supervises exchange activities. None of these officers receives any compensation other than his regular salary. The object of the exchanges is to provide convenient and reliable sources where soldiers can obtain their ordinary needs at

[4] G. O. 46, Hdqrs. of the Army.

[5] *United States* v. *Eliason*, 16 Pet. 291, 302; *Gratiot* v. *United States*, 4 How. 80, 117–118.

[6] 32 Stat. 927, 938.

[7] 47 Stat. 1571, 1573 ; 48 Stat. 1224, 1229. See Hearings, House, War Department Appropriation Bill, 1934, 72d Cong., 2d Sess., 648.

[8] 49 Stat. 1519, 1521, amended by 54 Stat. 1059, 1060–1061.

the lowest possible prices. Soldiers, their families, and civilians employed on military posts here and abroad can buy at exchanges. The Government assumes none of the financial obligations of the exchange. But government officers, under government regulations, handle and are responsible for all funds of the exchange which are obtained from the companies or detachments composing its membership. Profits, if any, do not go to individuals. They are used to improve the soldiers' mess, to provide various types of recreation, and in general to add to the pleasure and comfort of the troops.

From all of this, we conclude that post exchanges as now operated are arms of the Government deemed by it essential for the performance of governmental functions. They are integral parts of the War Department, share in fulfilling the duties entrusted to it, and partake of whatever immunities it may have under the Constitution and federal statutes. In concluding otherwise, the Supreme Court of California was in error.

Whether the California Supreme Court would have construed the Motor Vehicle Fuel License Act as applicable to post exchanges if it had decided the issue of legal status of post exchanges in accordance with this opinion, we have no way of knowing. Hence, a determination here of the constitutionality of such an application of the Act is not called for by the state of the record. Cf. *Minnesota* v. *National Tea Co.*, 309 U. S. 551, 557. Accordingly, we reverse the judgment and remand the cause to the court below for further proceedings not inconsistent with this opinion.

*Reversed.*