

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

September 28, 1949

Hon. Robert S. Calvert　　　　　　　Opinion No. V-916.
Comptroller of Public Accounts
Austin, Texas　　　　　　　　　　　Re: Is a club operated by civil-
　　　　　　　　　　　　　　　　　　　　ian employees of the army
　　　　　　　　　　　　　　　　　　　　on an army post subject to
　　　　　　　　　　　　　　　　　　　　occupation tax.

Dear Mr. Calvert:

　　　　　You present for the opinion of this office the liability
of the civilian club operated by the civilian employees of the Pyote
Air Force Base at Pyote, Texas, for certain occupation taxes im-
posed by Article 7047, V.C.S.

　　　　　Specifically, there are involved six slot machines, a
six-lane bowling alley, and a theatre, all taxable under different
sections of Article 7047, V.C.S., unless they are exempt under the
facts submitted by reason of Federal immunity. Concededly, all
these activities are operated by a club organized and promoted by
the civilian employees of a Federal Air Base at Pyote, Texas, and
all are operated upon the military reservation. This fact alone,
however, is not sufficient to afford Federal immunity from taxation
by the State.

　　　　　There are two conditions under which Federal immuni-
ty from taxation by the State must be recognized. The first is where
jurisdiction over the territory involved has been unconditionally ced-
ed by the State to the Federal Government, Surplus Trading Co. v.
Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.E. 1091 (1930); and, second,
where the tax is against a Federal instrumentality without congres-
sional consent. Admittedly, the first condition does not prevail here.
The only question, therefore, is whether the club is such a Federal
instrumentality as to be immune from the imposition of the taxes
here involved.

　　　　　The case closest to that under consideration is Standard
Oil Co. of California v. Johnson, 316 U.S. 481 (1942). There Cali-
fornia was attempting to impose a license tax on the privilege of dis-
tributing motor vehicle fuel when this fuel was sold by the distribu-
tor to Post Exchanges. The California statute made the tax inappli-
cable "to any motor vehicle fuel sold to the government of the United
States or any department thereof."

The tests used by the court in the above case in determining the status of post exchanges would seem to be applicable in determining the status of the civilian activities involved in this case, since the Air Force Judge Advocate claims that:

"It has been determined that the facilities mentioned are operated by the Civilian Welfare Fund on the base, set up under authority of AR 210-100 dated 15 February 1946. No part of the profit from the operation of said activities inures to the benefit of any individual. This fund is supervised and controlled by the Department of the Air Force and is a non-appropriated fund consisting of cash and other assets accumulated to finance welfare activities for all civilians regularly employed at the base.

"Since the above elements are present the activity is a federal one and consequently considered to be an instrumentality of the Government and, as such, entitled to all the privileges and immunities thereof."

The tests used in the Standard Oil Case, supra, are set out as follows:

"On July 25, 1895, the Secretary of War, under authority of Congressional enactments promulgated regulations providing for the establishment of post exchanges. These regulations have since been amended from time to time and the exchange has become a regular feature of Army posts. That the establishment and control of post exchanges have been in accordance with regulations rather than specific statutory directions does not alter their status, for authorized War Department regulations have the force of law.

"Congressional recognition that the activities of post exchanges are governmental has been frequent. Since 1903, Congress has repeatedly made substantial appropriations to be expended under the direction of the Secretary of War for construction, equipment, and maintenance of suitable buildings for post exchanges. In 1933 and 1934, Congress ordered certain moneys derived from disbanded exchanges to be handed over to the Federal Treasury. And in 1936, Congress gave consent to state taxation of gasoline sold by or through post exchanges, when the gasoline was not for the exclusive use of the United States.

"The commanding officer of an Army Post, subject to the regulations and the commands of his own superior officers, has complete authority to establish and maintain an exchange. He details a post exchange office to manage its affairs. This officer and the commanding officers of the various company units make up a council which supervises exchange activities. None of these officers receives any compensation other than his regular salary. The object of the exchanges is to provide convenient and reliable sources where soldiers can obtain their ordinary needs at the lowest possible prices. Soldiers, their families, and civilians employed on military posts here and abroad can buy at exchanges. The government assumes none of the financial obligations of the exchange. But government officers, under government regulations, handle and are responsible for all funds of the exchange which are obtained from the companies or detachments composing its membership. Profits, if any, do not go to individuals. They are used to improve the soldiers' mess, to provide various types of recreation, and in general to add to the pleasure and comfort of the troops."

The court then said:

"From all of this, we conclude that post exchanges as now operated are arms of the government deemed by it essential for the performance of governmental functions. They are integral parts of the War Department, share in fulfilling the duties entrusted to it, and partake of whatever immunities it may have under the constitution and federal statutes. In concluding otherwise the Supreme Court of California was in error."

In another case the court in construing a statute of South Carolina somewhat similar to our statute here involved held that an army post exchange was a Federal instrumentality engaged in governmental functions, so that a State statute imposing a license tax, graduated in accordance with volume of sales, upon every person for the exercise of the privilege of engaging in selling such articles as beer, wine, tobacco, soft drinks, playing cards, and candy, and requiring the procurement by the licensee of a license for each place of business operated by him, would be unconstitutional, as an interference with the activities of the United States, if enforced with respect to the lawful selling activities of any army post exchange. United States v. Query, 37 F. Supp. 972 (E.D.S.C. 1941, aff. 121 F.2d 631, cert. den. 314 U.S. 685). The taxes here involved, imposed under our statute, are in the nature of license or excise taxes, and we think the same rule pronounced by the court as to the South Carolina statute would apply.

Another case involving the South Carolina statute is United States v. Query, 21 F. Supp. 784 (E.D.S.C. 1937). This was an injunction suit brought by the United States to enjoin the South Carolina Tax Commissioner from collecting taxes imposed by a South Carolina statute against a Civilian Conservation Corps camp exchange. The only difference that we perceive between a Civilian Conservation Corps camp exchange and a civilian club of an army air base is that a Civilian Conservation Corps camp exchange has its existence by virtue of congressional legislation, Act June 28, 1937, 16 U.S.C.A. 584 et seq., whereas a civilian club of the army has its existence by virtue of army regulations. This difference is not material, for army regulations have the force of law. Standard Oil Co. of California v. Johnson, supra. The injunction was granted, and in the course of its opinion the court said:

"In performing its constitutional functions, the United States must operate through an instrumentality or agency. Here it operates through the agency of the camp exchange as an integral part of the Civilian Conservation Corps. The tax falls directly upon the camp exchange and the provisions of the state statute directly affect this instrumentality of the federal government selected for the exercise of its powers. The state tax in effect is upon the government's transactions in the exercise of its lawful power. The Civilian Conservation Corps camp exchange is of such a character and so intimately connected with the exercise of the operation of the Civilian Conservation Corps, the exercise of a power granted by the Act of Congress authorized by the Federal Constitution, that it is such a direct interference with the functions of the government itself as to be clearly beyond the taxing power of the state.

" . . .

"The tax imposed is a license tax and not a property one; being an excise tax it is laid on the enjoyment of a privilege, and in the case at bar falls upon the means by which the federal government undertakes to perform its lawful function. The state statute places within the hands of the Tax Commission the power to retard, impede, and burden the operation of the Civilian Conservation Corps camp exchange. The slightest degree of such interference or burden is prohibited."

We have examined AR 210-100 under which the civilian club of the Pyote Air Base is set up and operated, and there appears little, if anything, to distinguish it from a post exchange, which the

courts have held to be a Federal instrumentality and, therefore, exempt from State taxation. So long as such club continues to be an instrumentality of the Federal Government, it is exempt from the taxes in question by reason of Federal immunity, unless Congress should consent to its being taxed.

### SUMMARY

A civilian club organized and maintained under army regulations on an army post is a Federal instrumentality similar to post exchanges and is immune from a State occupation tax without congressional consent. Surplus Trading Co. v. Cook, 281 U.S. 647 (1930); Standard Oil Co. of California v. Johnson, 316 U.S. 481 (1942); United States v. Query, 121 F.2d 631; United States v. Query, 21 F. Supp. 784 (1938); AR 210-100.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

L. P. Lollar
Assistant

LPL/mwb

APPROVED

ATTORNEY GENERAL