**UNITED STATES OF AMERICA, Plaintiff**

v.

**MARTIN and DORENE SCHULTZ, Defendants**

Criminal No. 80/86

District Court of the Virgin Islands

Div. of St. Croix

July 30, 1980

Melvin H. Evans, Jr., Esq., Assistant United States Attorney (Office of the United States Attorney), Christiansted, St. Croix, V.I., *for plaintiff*

Jeffrey L. Resnick, Esq. (James & Resnick), Christiansted, St. Croix, V.I., *for defendants*

SILVERLIGHT, *Judge By Designation*

## MEMORANDUM OPINION WITH ORDER ATTACHED

This is a federal criminal prosecution under which defendants are charged with the unlawful possession of certain drugs with the intent to distribute. This matter is now before the Court on motion of defendants to suppress certain items of real evidence which were seized during two warrantless searches of their apartment. Pursuant to defendants' motion a hearing was held on July 23, 1980, at which time the Court received evidence and heard argument of counsel. After reviewing the evidence and being fully advised, the Court will grant the motion of defendants as to all evidence seized from their apartment during the two warrantless searches.

### I. FINDINGS OF FACT

On July 7, 1980, sometime after 9:40 p.m., Officers Miller and McBean of the Virgin Islands Department of Public Safety arrived at a residence located at No. 2, Estate Sight, St. Croix. The officers were responding to a telephone call made by the owner of the

residence by which he had reported the presence of a suspected narcotic substance which he had found in the guest apartment adjoining his home. The apartment was then rented by defendants, Martin and Dorene Schultz. At the time of the phone call and the visit by the police officers Mr. and Mrs. Schultz were not home. Upon arrival the officers spoke briefly with the owner/landlord and asked him to show them the suspected narcotic substance. The landlord then took the officers into the apartment where they seized a glass jar containing a white powder. The officers then returned to the headquarters of the Joint Narcotics Strike Force in Christiansted. The white powder which was seized from defendants' apartment was later identified as cocaine.

On July 9, 1980, at approximately 6:00 p.m., Officers Miller and McBean, accompanied by four other police officers, returned to No. 2 Estate Sight where they placed defendants under arrest, after which defendants were taken to the offices of the Joint Narcotics Strike Force. Upon their arrival at 6:25 p.m. defendants were taken to separate rooms for questioning. Mrs. Schultz was then shown a standard police form styled both as a "Warning as to Rights" and "Waiver of Rights." Among the rights of which Mrs. Schultz was advised was her right to speak to an attorney prior to any questioning. Mrs. Schultz refused to sign the waiver form, stating that her husband would contact their attorney. The police officers then questioning her, Officers Soto and Quinones, noted her refusal to sign the waiver at 6:33 p.m.

Despite the fact that Mrs. Schultz refused to waive her right to speak with an attorney prior to interrogation the police officers continued to question her. This continued for approximately two and one-half hours. Officer Miller described her behavior during this time as alternately crying and cursing. It seems clear that she was frightened, confused and upset.

Sometime during her questioning Mrs. Schultz admitted to the police that there was marijuana in her apartment. At approximately 9:00 p.m., as a result of her continued questioning, Mrs. Schultz signed a written form of waiver whereby she purportedly gave the police permission to search her apartment. She was then taken to the apartment by three police officers whom she let into the apartment. As a result of the ensuing search the officers confiscated a quantity of marijuana and two jars containing a residue of white powder.

The two searches and the arrests of defendants were conducted without the benefit of warrants.

## II. CONCLUSIONS OF LAW

 Because the two searches of defendants' home were carried out without a warrant, they are per se unreasonable under the Fourth Amendment unless the circumstances of the searches bring them within the scope of "a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). Prior to the admission against defendants of any evidence obtained as result of these searches the government must show, by a preponderance of the evidence, that the searches were within one of the exceptions which obviate the need for a warrant. Government v. Gereau, 502 F.2d 914, 928 (3rd Cir. 1974).

By their motion defendants contend that the government failed in its burden to show that the searches were permissible under the Fourth Amendment. In analyzing the problems raised by the motion the Court will rely on the foregoing findings of fact which were made solely in reliance on the testimony of witnessess presented by the government.

### A. *The July 7, 1980, Search*

 The government does not contend, nor can it, that the July 7th search of defendants' apartment was lawfully authorized by defendants' landlord. Stoner v. California, 316 U.S. 483 (1964). The government argues, however, that the warrantless search was justified by exigent circumstances which made it impractical to obtain a warrant. No such exigent circumstances have been shown. The Court may take judicial notice that on July 7, 1980, there were three judges of the Territorial Court and one U.S. Magistrate permanently assigned to St. Croix. It is safe to assume that at least one of these judicial officers could have been located with reasonably diligent effort. The police could easily have posted an officer at the entrance to the apartment in order to ensure that the suspected contraband remained undisturbed while another officer obtained a warrant. The police made no effort to do so.

 Because the government has failed to show that the July 7th search was reasonable despite the lack of a warrant, all evidence seized as a result of that search must be suppressed.

### B. *The July 9, 1980, Search*

 The government seeks to justify the second search of defendants' apartment by the written consent to search signed by Mrs. Schultz. The government has the burden of showing that the

purported consent was voluntarily given. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973).

██ The government's own witnesses testified to the effect that Mrs. Schultz invoked her right to confer with counsel prior to questioning by the police at 6:33 p.m. This should have terminated the interview. Miranda v. Arizona, 384 U.S. 436, 473–74 (1966). Despite this the police officers continued the questioning, eventually eliciting the admission by Mrs. Schultz regarding the marijuana in her apartment. After this admission was made she was persuaded to sign a form of waiver giving permission to search her apartment. This procedure, occurring during a period of two and one-half hours after all questioning ought to have ceased, was violative of Mrs. Schultz' Fifth and Sixth Amendment rights. This illegal questioning elicited an incriminating statement which in turn induced Mrs. Schultz to sign the consent to search form. The purported consent to search was obtained through exploitation of the illegal interrogation. Any evidence thus obtained pursuant to such "consent" must therefore be suppressed as the proximate result of this primary illegality. Wong Sun v. United States, 371 U.S. 471, 488 (1963).

## III. DISCUSSION

The end result of the foregoing exercise is that certain real evidence which is otherwise reliable and relevant will be deemed inadmissible in this proceeding. It is never easy for a court to suppress probative evidence. The task is not made easier by the knowledge that it would have been rendered quite unnecessary by the exercise of some measure of patience and restraint by the investigating officers in this case. There is no doubt that the authorities had probable cause to search defendants' apartment once they had been informed by defendants' landlord that he suspected narcotics were stored inside. Had the police exercised restraint and obtained a search warrant at that point there would have been little question of the legality of the search. Such a search would likely have turned up all narcotics hidden within the apartment, making the remainder of the arrest and interrogation proceedings quite unnecessary. Indeed, the police had ample time *after* the illegal July 7th search to obtain a search warrant based solely on the information available prior to the illegal search. Had they done so they might have legally obtained the drugs which were seized on July 9th and which now must be ruled inadmissible.

The lesson to be learned from this case is that one often acts in haste to repent at leisure. It is difficult to condemn police officers

for mistakes attributable to enthusiasm and zealousness, but it must be pointed out that the public interest in protection against both violations of civil rights and crime is best served by well trained police officers who have an appreciation for the constitutional limits of their powers regarding arrest, interrogation, search and seizure.

## ORDER

For the reasons set forth in the memorandum opinion of even date, it is hereby

ORDERED:

(1) That all real evidence seized as a result of the search of defendants' apartment on July 7, 1980, be, and is hereby, deemed INADMISSIBLE at trial in this case; and

(2) That all real evidence seized as a result of the search of defendants' apartment on July 9, 1980, be, and is hereby, deemed INADMISSIBLE at trial in this case.