DEPARTMENT OF the ARMY, UNITED STATES ARMY SUPPORT COMMAND, HAWAII, FORT SCHAFTER, HAWAII, Petitioner/Cross–Respondent,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent/Cross–Petitioner.

Nos. 88–7004, 88–7158.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 10, 1989.

Submission Withdrawn Jan. 24, 1990.

Resubmitted June 29, 1990.

Decided Sept. 18, 1990.

Robert K. Rasmussen and Jacob M. Lewis, Dept. of Justice, Washington, D.C., for petitioner/cross-respondent.

William E. Persina and Jill A. Griffin, Federal Labor Relations Authority, Washington, D.C., for respondent/cross-petitioner.

Before SKOPIL, FARRIS and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

The Department of the Army ("the Army") timely petitions for review of a Federal Labor Relations Authority ("FLRA" or "the Authority") decision ordering the Army to bargain with Service Employees International Union, Local 556 ("the Union") over two proposals relating to holidays and temporary disability insurance benefits for certain Nonappropriated Fund ("NAF") employees. The FLRA cross-petitions for enforcement of its decision. We have subject matter jurisdiction pursuant to 5 U.S.C. § 7123 and grant the FLRA's petition to enforce its bargaining order.

## I

All of the employees represented by the Union in this case work for a nonappropriated fund instrumentality ("NAFI") of the Army.[1] Some work for the post exchange at Fort Schafter. Exchanges such as this one "provide convenient and reliable sources where soldiers can obtain their ordinary needs at the lowest possible prices. Soldiers, their families, and civilians employed on military posts here and abroad can buy at exchanges." *Standard Oil Co. v. Johnson*, 316 U.S. 481, 484–85, 62 S.Ct. 1168, 1170, 86 L.Ed. 1611 (1942). Other NAF employees represented by the Union apparently work for different NAF programs, such as libraries and recreation centers. Like the exchange posts, these programs contribute their profits to morale, welfare, and recreational services and other programs designed to improve the quality of military life. *See American Fed'n of Gov't Employees, Local 1778 v. McGuire Air Force Base*, 6 F.L.R.C. 136, 137–38 (1978); *accord Johnson*, 316 U.S. at 485, 62 S.Ct. at 1170.

At issue in this case are two proposals which the Union asked the Army to adopt. The first proposal would grant the members of the bargaining unit ten specified paid holidays plus "[a]ny other day designated as a holiday by Federal statute or Executive order." The second proposal would require the Army to provide a temporary disability insurance plan "at no cost to the employees." The Army refused to bargain over the proposals and offered two reasons in support of its decision. First, the Army contended that the proposals did not concern "conditions of employment" within the meaning of 5 U.S.C. § 7102, and were therefore not subject to bargaining. Second, the Army claimed that because the proposals conflicted with certain agency regulations for which it has a "compelling need" according to 5 U.S.C. § 7117(a)(2), it had no duty to bargain over them.

The Union petitioned the FLRA for review of the Army's refusal to negotiate these proposals, along with certain other proposals not now at issue on appeal. The FLRA ruled that the proposals at issue did concern bargainable "conditions of employment" and that the Army had shown neither a compelling need for its rules in conflict with the holiday proposal nor an actual conflict between the sick leave proposal and an Army regulation authorizing NAF employees to receive workers' compensation benefits. For these reasons, the FLRA issued the Army a bargaining order. *See Service Employees Int'l Union, Local 556, AFL–CIO and Department of the Army, United States Army Support Command, Hawaii, Fort Schafter, Hawaii*, 29 F.L.R.A. (No. 124) 1553 (1987).

## II

■ Petitioner's first argument is grounded upon Title VII of the Civil Service Reform Act of 1978, also known as the Federal Service Labor–Management Relations Statute, 5 U.S.C. § 7101 *et seq.* ("FSLMRS"). Although the FSLMRS requires federal agencies to negotiate in good faith with the chosen representative of employees covered by the statute, 5 U.S.C. § 7114(a)(4), it also limits the scope of such bargaining to "conditions of employment." *Id.* § 7102(2). The Army argues that wages and the wage-related fringe benefits at issue in the bargaining proposals are not conditions of employment within the meaning of this provision.[2] Yet a unanimous

---

1. "The activities of a NAFI are not funded by congressional appropriation. Thus, the salaries and worker's compensation benefits of NAFI employees are paid out of the earnings generated by the activities of the NAFI." *Calder v. Crall*, 726 F.2d 598, 600 (9th Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 185, 83 L.Ed.2d 118 (1984).

2. The Army does not contend that the benefits at issue in this case fall within the statutory exception to the phrase "conditions of employ-ment" involving policies, practices or matters "specifically provided for by Federal statute," 5 U.S.C. § 7103(a)(14)(C). Although wages themselves probably can fit within this exception by virtue of the fact that at least some of the NAF employees represented by the Union appear to have their wages set according to the Prevailing Rate Act, 5 U.S.C. § 5342(a)(2)(B), the fringe benefits at stake in this case are not provided to NAF employees. Indeed, NAF employees are typically not considered to be employees for purposes of federal labor law benefits. Excep-

Supreme Court recently ruled that wages *are* bargainable conditions of employment. *Fort Stewart Schools v. FLRA,* — U.S. ——, 110 S.Ct. 2043, 2046–49, 109 L.Ed.2d 659 (1990). Therefore, the Army can only prevail on this issue to the extent the fringe benefits at stake in this case should be treated differently from wages generally. We do not perceive any reason to treat wages and wage-related benefits disparately for purposes of a "conditions of employment" analysis.[3]

### III

■ The Army's alternative argument is that the Union's bargaining proposals conflict with Army regulations for which it has a compelling need within the meaning of 5 U.S.C. § 7117(a)(2). This provision states that

[t]he duty to bargain in good faith shall, to the extent not inconsistent with Federal law or any Government-wide rule or regulation, extend to matters which are the subject of any agency rule or regulation ... *only if the Authority has determined under subsection (b) of this section that no compelling need (as determined under regulations prescribed by the Authority) exists for the rule or regulation.*

5 U.S.C. § 7117(a)(2) (emphasis added); *see also id.* § 7117(b) (detailing procedures by which "compelling need" determination is made); *id.* § 7105(a)(2)(D) (instructing FLRA to "prescribe criteria" for "compelling need" determination). An FLRA regulation lists three "illustrative criteria" pursuant to which the Authority will conclude that "[a] compelling need exists for an agency rule or regulation concerning any

condition of employment," 5 C.F.R. § 2424.11 (1990):

(a) The rule or regulation is essential, as distinguished from helpful or desirable, to the accomplishment of the mission or the execution of functions of the agency ... in a manner which is consistent with the requirements of an effective and efficient government.

(b) The rule or regulation is necessary to insure the maintenance of basic merit principles.

(c) The rule or regulation implements a mandate to the agency ... under law or other outside authority, which implementation is essentially nondiscretionary in nature.

*Id.* The Army argues that the Department of Defense Personnel Policy Manual for Nonappropriated Fund Instrumentalities and other Army regulations prohibiting the payment of fringe benefits to intermittent NAF employees [4] are "essential" within the meaning of subsection (a) as listed above. Unfortunately, the Army has failed to provide us with citation to these regulations. Nonetheless, we are willing to assume that some such regulations exist, for the Army's argument is unavailing in any event.

The Army's argument on appeal, simply put, is that because the NAF system is self-supporting, *see supra* note 1, payment of any fringe benefits to intermittent employees will come at the expense of the operating budgets of the various NAF programs. But acknowledging this basic mathematical fact is insufficient to prove that the regulation at issue is "essential" to the continued existence of the NAF's programs. For instance, even if providing intermittent NAF employees with fringe

---

tions, apart from wages for certain skilled and unskilled workers covered by the Prevailing Rate Act, include Sunday and overtime pay and worker's compensation. *See* 5 U.S.C. § 2105(c). Significantly, these exceptions do not include provisions relating to holidays, *id.* § 6013, or sick leave, *id.* § 6307.

**3.** Although this case was briefed and argued prior to the Supreme Court's decision in *Fort Stewart Schools,* we take note that the Army's brief repeatedly lumps wages and money-relat-

ed fringe benefits together for purposes of its discussion of the scope of the phrase "conditions of employment."

**4.** Intermittent employees generally do not have set schedules and work on an as-needed basis. They tend to be family members of servicemen seeking to supplement family income, and typically work anywhere from a few weeks to less than a year. The Army claims that a full 44 percent of its NAF employees work on this intermittent basis.

benefits would necessitate the raising of prices at the Fort Schafter exchange post, the new prices might still be lower than those charged by retail stores, thereby preserving the mission of the post and ensuring its continued vitality. The Army has failed to calculate not only the amounts that the proposals at issue would cost, but the financial impact that these costs would have on the operating budgets of Fort Schafter's NAF programs. We also note that the Army has failed to consider whether nonmonetary benefits might compensate for any significant and unavoidable costs attributable to the bargaining proposals. The FLRA has held that effectiveness and efficiency for purposes of 5 C.F.R. § 2424.11(a) are not to be measured solely in monetary terms. *See Lexington–Blue Grass Army Depot, Lexington, Ky. and American Fed'n of Gov't Employees, AFL–CIO, Local 894*, 24 F.L.R.A. (No. 6) 50, 53–54 (1986). As such, the Army has only demonstrated that its regulation is "helpful or desirable[ ] to the accomplishment of the [NAF] mission," 5 C.F.R. § 2424.11(a), not "essential."

Moreover, the Army's argument, even if correct, does nothing to explain why petitioner should not be required to bargain with the Union on behalf of the majority of NAF employees, who are categorized not as intermittent employees but as either regular or temporary employees. Both bargaining proposals at issue concern all three categories of NAF employees, not merely intermittent ones. As far as non-intermittent NAF employees are concerned, the Army has failed to establish a threshold conflict between the bargaining proposals and specific Army rules or regulations.

### IV

For the foregoing reasons, we grant the FLRA's petition to enforce its bargaining order, and we deny the Army's petition for

review. We note, however, that bargaining on the proposal for temporary disability insurance benefits must be limited to the subject of sick leave and not work-related injuries. NAF employees are compensated for these latter injuries pursuant to the procedures enumerated at 5 U.S.C. § 8171–8173. Accordingly, bargaining over workers' compensation issues is precluded by virtue of the fact that they are "specifically provided for by Federal statute," *id.* § 7103(a)(14)(C); *see supra* note 2.[5]

5. In its opinion, the FLRA was unable to conclude to what extent the temporary disability insurance proposal conflicts with an Army regulation authorizing civilian employees to receive workers' compensation benefits. On appeal, the Army has abandoned its argument that this is a regulation for which it has a compelling need and which conflicts with the proposal regarding disability insurance. Regardless whether the regulation conflicts with the bargaining proposal, however, 5 U.S.C. § 8171–8173 certainly conflict with the proposal to the extent that the proposal purports to cover work-related injuries.