# Authority of Military Exchanges to Lease General Purpose Office Space

The Navy Exchange Service Command, a nonappropriated fund instrumentality, and similar military exchange units constitute integral components of the Department of Defense, and their leasing authority, like that of other DoD components, is subject to the provisions of Reorganization Plan No. 18 of 1950, notwithstanding their status as NAFIs. Accordingly, they are not authorized to lease general purpose urban office space unless such authority is delegated to them by the General Services Administration.

August 1, 1997

MEMORANDUM OPINION FOR THE GENERAL COUNSELS

OF THE DEPARTMENT OF DEFENSE

AND THE GENERAL SERVICES ADMINISTRATION

This responds to your request for the Attorney General to resolve a disagreement between the Department of Defense ("DoD") and the General Services Administration ("GSA") which has been submitted to her for resolution[1] pursuant to Executive Order No. 12146.[2] The Attorney General has delegated her authority to resolve such disputes to this Office pursuant to 28 C.F.R. § 0.25(a) (1996). The disagreement centers on whether the Navy Exchange Service Command ("NEXCOM"), a nonappropriated fund instrumentality ("NAFI") within DoD, has legal authority to lease general purpose office space in urban centers in the absence of a delegation of authority to do so from GSA. DoD asserts that NEXCOM has such authority, while GSA takes the contrary position.

We conclude that NEXCOM and similar military exchange units constitute integral components of DoD and that their leasing authority, like that of other DoD components, is subject to the provisions of Reorganization Plan No. 18 of 1950, notwithstanding their status as NAFIs. Accordingly, NEXCOM is not authorized to lease general purpose urban office space for itself unless such authority is delegated to it by GSA.

---

[1] Letter for Janet Reno, Attorney General, from Judith A Miller, General Counsel, Department of Defense (Sept. 13, 1996) DoD's views on the issue in question are set forth in Memorandum for the General Counsel, Department of the Navy, from Robert S Taylor, Deputy General Counsel, Department of Defense, Re: Authority of a Non-Appropriated Fund Instrumentality (NAFI) to Enter Into a Lease Without Delegation from GSA (Aug. 30, 1996) ("DoD Memo"). The GSA's views are set forth in a letter to Robert S. Taylor, Deputy General Counsel, Department of Defense, from Emily C. Hewitt, General Counsel, General Services Administration (Aug. 23, 1996) ("GSA Letter")

[2] Executive Order No 12146 is reprinted as a note following 28 U.S C § 509 (1994) and provides in section 1–402 thereof.

> Whenever two or more Executive agencies whose heads serve at the pleasure of the President are unable to resolve . a legal dispute, the agencies shall submit the dispute to the Attorney General prior to proceeding in any court, except where there is a specific statutory vesting of responsibility for resolution elsewhere

# I. BACKGROUND

## A.

Except insofar as delegated to the head of an executive branch agency pursuant to 40 U.S.C. § 486(d) (1994) or section 3(b) of Reorganization Plan No. 18 of 1950 ("Reorg. Plan"),[3] GSA is the sole authority for leasing general purpose urban office space in the United States for any governmental entity that is covered by the Reorganization Plan.

Reorganization Plan No. 18 was promulgated pursuant to the provisions of the Reorganization Act of 1949, Pub. L. No. 81–109, 63 Stat. 203 ("Reorg. Act"). It provided that all functions regarding the Government's acquisition and disposition of building space by lease, with certain enumerated exceptions, were to be transferred from the "respective agencies" in which such functions were previously vested to the Administrator of General Services. Reorg. Plan § 1. Nothing in the text of Reorganization Plan No. 18 indicates that NAFIs in general, or military exchanges in particular, were to be excluded from its coverage. On the other hand, the Reorganization Plan did enumerate specific categories of government property that *were* excluded from its provisions: space in buildings located in foreign countries or on military bases; space in hospitals, laboratories, factories, and other."special purpose" buildings; and all leasing of the Post Office Department. Reorg. Plan § 1(a)–(d).

The Federal Property and Administrative Services Act ("Property Act") separately authorizes GSA to enter into lease agreements covering periods of not more than twenty years "for the accommodation of Federal agencies." 40 U.S.C. § 490(h)(1) (1994). This leasing authority provision was not part of the original Property Act (which was enacted in 1949, *see* Pub. L. No. 81–152, 63 Stat. 377), but was added by amendment in 1958. *See* Pub. L. No. 85–493, 72 Stat. 294 (1958). At the time the 1958 amendment was enacted, leasing authority for federal agencies and departments had already been transferred to GSA on July 1, 1950, pursuant to Reorganization Plan No. 18. Thus, the effect of the 1958 amendment enacting § 490(h)(1) was to expand the GSA's *existing* leasing authority to increase the permissible duration of authorized leases from five years to ten years (subsequently increased to 20 years). *See* Pub. L. No. 85–493, 72 Stat. at 294; H.R. Rep. No. 85–1814, at 2–3 (1958), *reprinted in* 1958 U.S.C.C.A.N. 2877, 2879.

---

[3] Section 3(b) of the Plan provides·

When authorized by the Administrator of General Services, any function transferred to him by the provisions of this reorganization plan may be performed by the head of any agency of the executive branch of the Government or, subject to the direction and control of any such agency head, by such officers, employees, and organizational units under the jurisdiction of such agency head as such agency head may designate

Reorg Plan No 18 of 1950, § 3(b), 15 Fed Reg. 3177, *reprinted in* 40 U S C § 490 note (1994), *and in* 64 Stat 1270 (1950)

**B.**

NEXCOM is a nonappropriated fund instrumentality established under the authority of 10 U.S.C. § 136 (1994),[4] 10 U.S.C. § 3013(b)(9) (1994) (Secretary of the Navy's responsibility to provide for the morale and welfare of Navy personnel), and DoD Directive 1015.1 ("Establishment, Management, and Control of Nonappropriated Fund Instrumentalities") (Aug. 19, 1981). DoD Directive 1015.1 defines a military exchange NAFI as follows:

> An integral DoD organizational entity that performs an essential government function. It acts in its own name to provide or to assist other DoD organizations in providing [morale, welfare, and recreation] programs for military personnel and authorized civilians. It is established and maintained individually or jointly by the Heads of DoD Components. As a fiscal entity, it maintains custody of and control over its [nonappropriated funds]. It is also responsible for the exercise of reasonable care to administer, safeguard, preserve, and maintain prudently those appropriated fund resources made available to carry out its function. It contributes, with its [nonappropriated funds] to the [morale, welfare, and recreation] programs of other authorized organizational entities, when so authorized. It is not incorporated under the laws of any state or the District of Columbia and it enjoys the legal status of an instrumentality of the United States.

*Id.*, Encl. 2.

We are advised that military exchange NAFIs are presently established under the authority of the Assistant Secretary of Defense for Force Management Policy or one of the Service Secretaries (or their respective designees). DoD Memo at 4–5 and n.2. Employees of a military exchange NAFI are classified as federal employees within the Department of Defense. *See Honeycutt v. Long*, 861 F.2d 1346, 1349 n.3 (5th Cir. 1988). The House Armed Services Committee has described the military exchange NAFIs as follows:

> Nonappropriated fund activities of the Department of Defense occupy a unique position. They render a service vital to the morale of military personnel and their dependents. Nonappropriated funds are instrumentalities of the Federal Government and are entitled to the sovereign immunities and privileges of the United States as pro-

---

[4] That section provides that the Under Secretary of Defense for Personnel and Readiness, "[s]ubject to the authority, direction, and control of the Secretary of Defense, . shall perform such duties and exercise such powers as the Secretary of Defense may prescribe in the areas of . . exchange, commissary, and nonappropriated fund activities." *Id*

vided in the Constitution, statutes, treaties, and agreements with foreign governments.

Special Subcomm. on Nonappropriated Fund Activities Within the Department of Defense of House Comm. on Armed Services, 92d Cong., *Review of Nonappropriated Fund and Other Resale Activities Within the Department of Defense* 16615 (Comm. Print 1972).

The nature and status of the military exchanges (sometimes called "post exchanges") was further described as follows by the U.S. Court of Appeals for the Fifth Circuit (there with particular reference to the Army and Air Force Exchange Service ("AAFES"), the Army/Air Force equivalent of NEXCOM):

> The AAFES is created by federal statute, 10 U.S.C. §§ 4779(c), 9779(c), and is under the military's control. *See Standard Oil Co. of Cal. v. Johnson,* 316 U.S. 481, 484, 62 S. Ct. 1168, 86 L.Ed. 1611 (1942) ("post exchanges . . . are arms of the government. . . . *They are integral parts of the war department . . . and partake of whatever immunities it may have under the Constitution and federal statutes.*"). Moreover, Congress controls the types of goods and services that can be provided, establishes price ceilings, and limits those who may use an AAFES. The purpose of the AAFES is to provide low cost merchandise and services to military personnel of the United States. The United States uses profits and dividends from the AAFES to fund military welfare plans. It is thus well established by the statutes and cases that the United States contemplates and manifests supervision and control over the AAFES and its property.

*United States v. Sanders,* 793 F.2d 107, 108–09 (5th Cir. 1986) (emphasis added; citations omitted).

DoD acknowledges that NAFIs such as NEXCOM derive their powers and authorities from regulations promulgated by DoD or the Service Departments and "cannot be given authority by the Secretary or the Secretaries of the Military Departments . . . that they [i.e., the DoD and Service Secretaries] do not have." DoD Memo at 5. Further, as noted in DoD's legal memorandum on this issue, military exchange NAFIs may not enter into lease agreements for the use of "non-DoD" lands or buildings "except upon specific approval by the head of the DoD Component concerned." *Id.* at 1 n.1 (quoting DoD Directive 1015.6, Encl. 3 ("Funding of Morale, Welfare, and Recreation Programs") (Aug. 3, 1984)) ("DoD Directive 1015.6").

It is our understanding that NEXCOM has not been delegated authority from GSA to enter into leases for general purpose office space in urban centers. The

question presented is whether, in the absence of such a delegation, NEXCOM has legal authority to enter into such leases on its own.

## II. ANALYSIS

### A.

In contending that NEXCOM has leasing authority independent of any delegation from GSA, DoD asserts three main arguments: (1) because military exchange NAFIs do not in themselves constitute "federal agencies" as defined in the Property Act, their leasing activities are not subject to GSA's authority under that act, DoD Memo at 2–4; (2) a federal statute's applicability to NAFIs may not be inferred from language encompassing federal entities in general, and neither the Property Act nor Reorganization Plan No. 18 contain special provisions explicitly stating that they apply to NAFIs, *id.* at 2–3; and (3) NEXCOM retains a residual leasing authority, derived through DoD, that is independent of both the Property Act and Reorganization Plan No. 18, *id.* at 4–8. The thrust of this latter argument appears to be that, because NAFIs are not themselves "federal agencies" under the Property Act, DoD's authority over their leases was never transferred to GSA under the Property Act or pursuant to Reorganization Plan No. 18, and such authority is therefore still retained by DoD or by the military exchanges.[5]

In contrast, GSA contends that (1) whether or not NEXCOM satisfies the Property Act's definition of a "federal agency" in its own right, it constitutes an integral component of DoD and the Department of the Navy, and (2) inasmuch as the leasing authority of DoD and the Department of the Navy was indisputably transferred to GSA under the provisions of Reorganization Plan No. 18, so was that of NEXCOM. GSA Letter at 1–2.

### B.

Reorganization Plan No. 18 provides that "*[a]ll* functions with respect to acquiring space in buildings by lease . . . are hereby transferred from the respective agencies in which such functions are now vested to the Administrator of General Services," exclusive of certain enumerated exceptions. Reorg. Plan § 1 (emphasis added). The specified exceptions from GSA's comprehensive assumption of federal government leasing authority included space in buildings located in foreign countries or on military bases, certain "special purpose" properties

---

[5] DoD also contends that certain other statutory restrictions on government acquisition of real property (including leases) cited by GSA are not applicable to the leasing authority at issue here. DoD Memo at 9–12. Because we conclude that authority over NAFI leasing is vested in GSA under Reorganization Plan No. 18, we need not address these alternative sources of leasing restrictions. We do note that, whether or not the statutes cited by GSA are applicable in this context, leases undertaken by NEXCOM pursuant to a valid delegation from GSA would be "authorized by law" within the meaning of such statutes. *See, e.g.*, 10 U.S.C. § 2676(a) (1994).

(such as hospitals and prisons), and space occupied by the Post Office Department. President Truman described Reorganization Plan No. 18 as follows:

> The plan transfers to the Administrator of General Services the functions of the various Federal agencies with respect to leasing and assigning general-purpose space in buildings and the operation, maintenance, and custody of office buildings.
>
> . . . .
>
> This plan concentrates in the General Service Administration the responsibility for the leasing and assignment of what is termed general purpose building space; that is, space which is suitable for the uses of a number of Federal agencies. It specifically excludes space in buildings at military posts, arsenals, navy yards, and similar defense installations and space in hospitals, laboratories, factories, and other special purpose buildings.

Pub. Papers of Harry S. Truman 217–18 (1950).

It is not disputed that DoD's leasing authority was transferred to GSA under the Reorganization Plan. Moreover, DoD acknowledges that "the divestiture of [federal agency] leasing authority contained in Reorganization Plan No. 18 was *of all functions*, as opposed to just those functions being exercised on behalf of an agency," DoD Memo at 7. Nonetheless, DoD argues that the leasing authority of the military exchanges was implicitly excluded from the Reorganization Plan's wholesale divestiture of DoD leasing authority.

As in its contentions concerning the Property Act (see Part II.C, *infra*), DoD primarily argues that NAFIs fall outside the coverage of the Reorganization Plan because the Plan, and certain related official statements referring to it, used the term "agencies" or "federal agencies" in referring to the entities affected by it. DOD Memo at 6–7. Because NAFIs are "instrumentalities" that are not "federal agencies," the argument continues, authority over their leases was not transferred under the Reorganization Plan. *Id.* at 8.[6]

We do not find this line of argument persuasive. The Reorganization Plan contains no definition of "agency" or "federal agency," and it does not incorporate the definitions of the Property Act by reference or otherwise.[7] There is no sugges-

---

[6] DoD supplements this argument with the related contention that "any intent to circumscribe the authority of the NAFIs must be clearly evidenced " DoD Memo at 8 We address this contention in Part II D, *infra*.

[7] Because the Reorganization Plan was enacted pursuant to the Reorganization Act of 1949, that act's definition of "agency" could be considered relevant to the scope of that term as used in the Reorganization Plan. That definition provides in relevant part.

> When used in this Act, the term "agency" means any executive department, commission, council, independent establishment, Government corporation, board, bureau, division, service, office, officer authority, administration, or other establishment, in the executive branch of the Government . . .

tion in the Reorganization Plan or related materials that its reference to "the respective agencies," Reorg. Plan § 1, was intended to exclude from coverage those components or sub-units of an agency that do not themselves satisfy some unspecified definition of the term "agency" or "federal agency." On the contrary, the text of the Reorganization Plan and the accompanying Presidential statement confirm that, apart from those discrete government programs and activities that were specifically excepted, the Plan's transfer of leasing functions was intended to extend throughout the Federal Government.[8]

We believe that DoD's argument that the leasing authority of the military exchanges was implicitly excluded from the comprehensive sweep of Reorganization Plan No. 18 is incompatible with the exchanges' status as integral components of DoD. That status is well-established and long-recognized. In *Standard Oil Co. v. Johnson*, for example, the Supreme Court concluded that the military post exchanges "are arms of Government . . . essential for the performance of governmental functions" and constitute an "integral part[ ] of the War Department [now DoD] . . . and partake of whatever immunities it may have under the Constitution and federal statutes." 316 U.S. at 485. Numerous other cases have similarly acknowledged the status of the military exchanges as integral components of DoD. *See, e.g., Honeycutt v. Long*, 861 F.2d 1346, 1349 (5th Cir. 1988) (holding that the Secretary of Defense or the Service Secretaries are proper named defendants in an employment discrimination suit brought by a NAFI employee, the court stated, "The AAFES is a part of the Department of Defense."); *Ellsworth Bottling Co. v. United States*, 408 F. Supp. 280, 284 (W.D. Okla. 1975) (statutory exclusion of DoD from procurement provisions of Property Act applies to AAFES as well because it "is an integral part of the Department of Defense"). As observed by the Seventh Circuit in *Champaign-Urbana News Agency, Inc. v. J. L. Cummins News Co.*, 632 F.2d 680 (7th Cir. 1980) (holding that NAFI post exchanges are entitled to governmental immunity under the Robinson-Patman Act), "[t]o try to separate [a military exchange] from our military forces is to wholly ignore all its unique features distinguishing it from private enterprise and to ignore the long established views of both the Congress and the Executive Branch." *Id.* at 692.[9]

---

Reorg Act § 7, 63 Stat at 205 This definition is comprehensive and would appear to readily encompass military exchange organizations such as NEXCOM.

[8] We note, for example, that section 3(b) of the Reorganization Plan provides that the GSA Administrator may authorize the head of any executive branch agency to designate "organizational units" under the jurisdiction of such agency to perform the leasing and other functions covered by the Reorganization Plan. We believe this provision demonstrates that Reorganization Plan No. 18 applies not only to the "respective agencies" referred to therein but also to the organizational units and components comprising such agencies. In this regard, DoD's own regulations recognize that a military exchange NAFI is "[a]n integral DoD organizational entity." DoD Directive 1015 1, Encl 2.

[9] A NAFI's status as an integral component of its "host" department has also been recognized by Congress. As stated in the House Report accompanying Pub. L No. 91–350, 84 Stat 449 (authorizing Tucker Act jurisdiction over claims against nonappropriated fund agencies), "[a] nonappropriated fund instrumentality may not be sued because *it has a privileged status as an integral part of a department or agency of the United States* and is not subject to suit unless consent thereto has been granted by Congress " Letter for Emanuel Cellar, Chairman, House

Continued

DoD itself acknowledges that "when we talk about the authority of the NAFIs we are always talking about the authority of the [Service] Secretaries acting through the NAFIs." DoD Memo at 8 n.6.[10] The NAFIs' status as subordinate DoD components extends to their leasing authority as well as to other functions. Thus, their leases of non-DoD land or buildings are subject to "specific approval by the head of the DoD Component concerned." DoD Directive 1015.6, *quoted in* DoD Memo at 1 n.1.

Given these factors, we are not persuaded that leasing authority for DoD NAFIs is independent and apart from DoD's overall leasing authority. Accordingly, in the absence of any provision or evidence to the contrary, the leasing authority of the military exchanges would have been transferred to GSA along with that of other DoD components under the terms of Reorganization Plan No. 18.

We find nothing in the text of the Reorganization Plan indicating that military exchange facilities were to be excluded from its provisions.[11] Although the Reorganization Plan explicitly enumerates those particular functions and facilities that *were* to be exempted — including facilities located on military bases — the list makes no reference to NAFIs or military exchanges.[12] Under the interpretative canon *expressio unius est exclusio alterius*, the NAFIs' absence from the Reorganization Plan's enumeration of excluded entities makes it difficult to conclude that they were somehow implicitly excluded from its coverage. *See TVA v. Hill*, 437 U. S. 153, 188 (1978) (*expressio unius* canon applied to support Court's conclusion that the similarly enumerated exceptions to the Endangered Species Act were exclusive).[13]

---

Judiciary Committee, from Spencer J Schedler, Assistant Secretary of the Air Force (Sept 24, 1969), *reprinted in* H.R Rep No. 91–933, at 10 (1970), *and in* 1970 U.S C C.A N 3477, 3486 (emphasis added)

[10] The NAFIs' status as integral and subordinate components of DoD is further confirmed and reinforced by the provisions of 10 U.S C § 2783 (1994), enacted in 1992, which directs the Secretary of Defense to "prescribe regulations governing — (1) the purposes for which nonappropriated funds of a nonappropriated fund instrumentality of the United States within the Department of Defense may be expended; and (2) the financial management of such funds to prevent waste, loss, or unauthorized use "

[11] The Acting Assistant Solicitor General provided an assessment of Reorganization Plan No. 18 for the Attorney General's consideration prior to its adoption Memorandum for the Attorney General from Abraham J Harris, Acting Assistant Solicitor General, *Re: Reorganization Plan No 18 of 1950 and Message of the President transmitting the plan to the Congress* (Mar 9, 1950) This memorandum noted the particular categories of property that were to be excluded from the Plan's coverage, but gave no indication that the leases or properties of NAFIs or military exchanges were to be excluded On the contrary, the memorandum described the Plan's coverage in comprehensive terms, noting that it gave GSA leasing authority over "government-owned or government-leased general purpose buildings " *Id.* at 1

[12] Military exchanges are excepted from the Reorganization Plan's provisions only insofar as they are located in foreign countries or on military bases, Reorg Plan § 1(a)–(b), but the leasing authority of such military exchanges is not in issue here.

[13] As one U.S. Court of Appeals stated in considering an antitrust suit against the Army and Air Force Exchange Service ("AAFES"), "when the Congress desires to modify the usual rule or to make special provision applicable to AAFES operations it knows how to do it " *Champaign-Urbana News Agency, Inc v J L. Cummins News Co.*, 632 F 2d 680, 692 (7th Cir 1980). We believe this applies generally to military exchange NAFIs

## C.

DoD's argument initially focused on whether military exchange NAFIs independently conform to the definition of a "federal agency" under the Property Act (DoD Memo at 1–4). The appropriate focus, however, is on the Reorganization Plan. Although the Property Act authorizes GSA to enter into lease agreements "necessary for the accommodation of Federal agencies," 40 U.S.C. § 490(h)(1) (1994), that section did not give GSA *exclusive* federal government leasing authority or transfer previously existing agency leasing authority from the agencies to GSA. Rather, the wholesale transfer of federal government leasing authority from the federal departments and agencies to GSA was accomplished by Reorganization Plan No. 18 in 1950, not by the Property Act in 1949. Had the Property Act already transferred the departments' and agencies' leasing authority to GSA when it was enacted in 1949, the Reorganization Plan's transfer of agency leasing functions in 1950 would have been redundant and unnecessary.

In this regard, it is significant to note that Reorganization Plan No. 18 was promulgated pursuant to the Reorganization Act of 1949, not the Property Act. Moreover, the particular GSA leasing provision contained in subsection 490(h)(1) and relied upon by DoD was not added to the Property Act until 1958 — eight years after the general transfer of agency leasing authority to GSA under the Reorganization Plan. *See* Pub. L. No. 85–493, 72 Stat. 294 (1958). Because Reorganization Plan No. 18, not the Property Act, is the source of GSA's exclusive leasing authority over DoD and its components, NEXCOM's failure to conform to the Property Act's definition of a "federal agency" in its own right (i.e., apart from DoD) does not remove it from the transfer of leasing authority effectuated by Reorganization Plan No. 18. An entity's status as a "federal agency" under the Property Act was simply not a precondition to coverage under the Reorganization Plan.[14]

Even if the Property Act (as opposed to the Reorganization Plan) were the source of GSA's exclusive government-wide leasing authority, DoD's argument that satisfying the Act's definition of "federal agency" is critical to an organization's coverage under the Act proves too much. Insofar as relevant here, the Property Act defines "federal agency" as "any executive agency," which includes

---

[14] For the same reasons, DoD's reliance on the Comptroller General's opinion in *Matter of LDDS Worldcom*, No B–270109, 1996 WL 45162 (C.G Feb 6, 1996), is unavailing That opinion concluded that NEXCOM's contracts are not subject to the Comptroller General's bid protest jurisdiction under the Competition in Contracting Act ("CICA") because NEXCOM did not independently meet CICA's definition of "federal agency," as adopted from the Property Act's definition of that same term Initially, we note that the Comptroller General's rulings are not binding on this Office or the executive branch in general, although they are generally informative sources on matters within the Comptroller General's authority *See Bowsher v Synar*, 478 U.S. 714, 728–32 (1986); *Implementation of the Bid Protest Provisions of the Competition in Contracting Act*, 8 Op O.L.C. 236, 246 (1984). Although we have serious questions regarding the reasoning of the opinion in *LDDS Worldcom* — i e., its reliance on whether NAFIs independently meet the definition of a "federal agency" rather than whether they constitute integral components of a federal agency for purposes of coverage under the Property Act — the resolution of that issue is not critical here in light of our conclusion that NEXCOM's leasing authority was transferred to GSA pursuant to Reorganization Plan No. 18.

"any executive department or independent establishment in the executive branch of the Government, including any wholly owned Government corporation." 40 U.S.C. § 472(a), (b) (1994). We agree that NEXCOM does not independently satisfy that definition. Neither, however, do various other DoD components that are indisputably covered by the Property Act[15] and the Reorganization Plan. The Department of the Navy, for example, does not constitute an "executive department" or an "independent establishment," *see* 5 U.S.C. §§ 101, 104 (1994), but, rather, constitutes a "military department," *id.* § 102. Yet it can hardly be maintained that the Navy Department falls outside the coverage of the Property Act because it does not meet the Act's technical definition of "federal agency." The Navy Department is covered under the Property Act not because it independently satisfies the Act's definition of "federal agency," but because it is an integral component of a larger federal agency, i.e., DoD. Because the military exchanges are likewise integral components of DoD (discussed further, *infra*), *see Standard Oil Co. v. Johnson*, 316 U.S. 481, 485 (1942), the same holds true for NEXCOM.

We recognize that in *Ellsworth Bottling Co. v. United States*, 408 F. Supp. at 284, a U.S. District Court held that the Army and Air Force Exchange Service ("AAFES"), a NAFI, was not subject to the requirements of the Property Act governing the procurement of goods and services, *see* 41 U.S.C. §§ 252, 253 (1994).[16] The court reached this conclusion in part because it determined that the AAFES did not constitute an "executive agency" for purposes of 41 U.S.C. § 252(a), as defined in 40 U.S.C. § 472 (1994). *Id.* at 283–84. Significantly, however, that conclusion rested upon the court's determination that AAFES did not satisfy the "independent establishment" prong of the "executive agency" definition *because it "is a part of the Department of Defense"* and therefore cannot be an independent establishment. *Id.* at 284 (emphasis added). The court further concluded that, because DoD was explicitly excluded from the procurement provisions of the Property Act in question under 41 U.S.C. § 252(a)(1), AAFES was also excluded as "an integral part of the Department of Defense." 408 F. Supp. at 284–85. Thus, *Ellsworth Bottling* is consistent with the view that a NAFI's coverage under federal statutes like the Property Act is a function of its status as an integral part of DoD rather than its status as an independent entity.

---

[15] Our discussion of the Property Act's coverage of DoD and its components in this memorandum refers only to those portions of the Property Act codified in Chapter 10 of title 40, United States Code ("Management and Disposal of Government Property"). We recognize that DoD and its components are explicitly exempted from the separate provisions of the Property Act governing the procurement of goods and services which are codified in Subchapter IV ("Procurement Provisions"), Chapter 4, of title 41, United States Code *See* 41 U S C § 252(a)(1) (1994)

[16] *See also MCI Telecommunications Corp v Army and Air Force Exch Serv*, No Civ.A 95–0607 RMU, 1995 WL 317435, at *6 (D.D C May 9, 1995) (holding in accord with *Ellsworth Bottling*)

## D.

Citing a number of statutes where Congress has included specific provision for the coverage of NAFIs, or expressly provided for distinct treatment of NAFIs, DoD makes the additional contention that "it is clear as a matter of statutory interpretation that coverage of NAFIs is not to be inferred from language encompassing Federal entities in general." DoD Memo at 2–3. By this reasoning, statutes generally applicable to federal departments and agencies (like the Property Act and Reorganization Plan No. 18) would not apply to NAFIs unless they make explicit provision for such application. We think this argument proves too much.

As noted above, Reorganization Plan No. 18 went to considerable lengths in enumerating the particular types of organizations and facilities whose leasing authority was excluded from the Plan's otherwise comprehensive coverage. Reorg. Plan § 1(a)–(d). Particularly detailed provision was made for exempting various categories of military facilities and organizations from the transfer of leasing functions to GSA. *Id.* § 1(b). It is therefore apparent that careful consideration was given to identifying those categories of government and military leasing activity that were unsuitable for transfer to GSA, yet military exchanges were not listed among the exempted activities. Thus, although a specific provision for NAFIs may arguably be required to support their coverage in some statutory contexts, the carefully wrought provisions of Reorganization Plan No. 18 obviate the need for following that approach here.

We recognize that special statutory provisions have sometimes been considered necessary to support the Government's assumption of a NAFI's contractual liabilities or financial obligations, such as the provision for the Tucker Act's application to military exchange contracts. *See* 28 U.S.C. § 1491(a)(1) (1994). As the Supreme Court stated in *United States v. Hopkins*, 427 U.S. 123, 127 (1976):

> The nonappropriated-fund status of the exchanges places them in a position whereby the Federal Government, absent special legislation, does not assume the obligations of those exchanges in the manner that contracts entered into by appropriated fund agencies are assumed.

Although that observation explains why a specific amendment was considered necessary to extend the Government's liability for breach of contract under the Tucker Act to military exchange NAFIs, its reasoning does not extend to the leasing provisions of Reorganization Plan No. 18.

Under the Reorganization Plan and the Property Act, GSA assumes the NAFIs' leasing *functions*, not its ultimate financial *liabilities* as a lessee. Reorg. Plan § 1; 40 U.S.C. § 490(h)(1). NEXCOM is required to reimburse GSA for space leased by GSA and furnished to NEXCOM. 40 U.S.C. § 490(j) (1994) (GSA directed to charge those entities for whom it furnishes space at rates approximating

commercial charges for comparable space); 41 C.F.R. § 101–21.6 (1996) (providing billing procedures for rent charges to agencies occupying space furnished under the leasing responsibilities of GSA).[17] Thus, GSA's assumption of NEXCOM's leasing functions would not require GSA to subsidize the leases of the military exchanges with appropriated funds. Viewed from a functional standpoint, GSA would be acting in the manner of a sub-lessor to NEXCOM — i.e., entering into lease agreements for NEXCOM's "accommodation," *see* 40 U.S.C. § 490(h)(1) — rather than assuming lease liabilities undertaken by NEXCOM. Accordingly, the concerns regarding the Government's assumption of NAFI financial obligations that may justify a requirement for specific provision to make a law applicable to NAFIs in other contexts are not applicable here.

## Conclusion

In the absence of a delegation from GSA pursuant to section 3(b) of Reorganization Plan No. 18, we conclude that NEXCOM and other military exchange NAFIs lack independent authority to lease general purpose office space in urban centers.

DAWN E. JOHNSEN
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[17] We recognize that GSA is authorized to exempt agencies from lease reimbursement requirements if it "determines that such charges would be infeasible or impractical " 40 U S C § 490(j) However, we do not believe that this limited, contingent provision authorizes the kind of liability assumption that might require Congress to make specific provision in order for it to apply to NAFIs